FIRSTENERGY CORPORATION et al., Appellants,

v.

CITY OF CLEVELAND et al., Appellees.

[Cite as *FirstEnergy Corp. v. Cleveland*, 182 Ohio App.3d 357, 2009-Ohio-2257.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91624.

Decided May 14, 2009.

Roetzel & Andress and Ricardo J. Cardenas, for appellants.

Robert J. Triozzi, Cleveland Law Director, and Larry G. Webb, Assistant Law Director, for appellee city of Cleveland.

---

CHRISTINE T. McMONAGLE, Judge.

{¶ 1} Plaintiffs-appellants, FirstEnergy Corporation and The Cleveland Electric Illuminating Company (collectively "FirstEnergy"), appeal the trial court's May 13, 2008 judgment granting summary judgment in favor of defendant-appellee the city of Cleveland. We affirm.

{¶ 2} FirstEnergy initiated this action on November 20, 2006, asserting negligence, trespass, and nuisance claims against the city of Cleveland and John Does. During the pendency of the case, the John Does were never named and served.

{¶ 3} Although the parties do not raise the issue of jurisdiction, we address the issue when jurisdiction appears uncertain. See *Kohout v. Church of St. Rocco Corp.*, Cuyahoga App. No. 88969, 2008-Ohio-1819, 2008 WL 1747217; *Mosley v. 131 Foods, Inc.*, Cuyahoga App. No. 87696, 2006-Ohio-5719, 2006 WL 3095688. In *Mosley*, this court considered whether a trial court's order granting

summary judgment is a final appealable order when the plaintiff's time for identifying and serving John Doe defendants has not expired.

{¶ 4} In dealing with unnamed parties, the court must consider Civ.R. 15(D) in conjunction with Civ.R. 3(A). *Kohout,* 2008-Ohio-1819, 2008 WL 1747217, at ¶ 6; *Jackson–Summers v. Brooks,* Cuyahoga App. No. 86522, 2006-Ohio-1357, 2006 WL 728738, ¶ 15. Civ.R. 15(D) provides, "[W]hen the plaintiff does not know the name of a defendant, that defendant may be designated in a pleading or proceeding by any name and description. When the name is discovered, the pleading or proceeding must be amended accordingly." Under Civ.R. 3(A), an action is commenced by filing a complaint "if service is obtained within one year from such filing upon a named defendant, * * * or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D)."

{¶ 5} Applying these rules, this court recognizes that when the one-year period for naming and serving a John Doe defendant has expired, a judgment rendered as to other defendants may be considered final and appealable because the action never commenced against the John Doe defendants. See, e.g., *Kohout,* 2008-Ohio-1819, 2008 WL 1747217, at ¶ 8; *Jackson–Summers,* 2006-Ohio-1357, 2006 WL 728738, at ¶ 16; *Mosley,* 2006-Ohio-5719, 2006 WL 3095688, ¶ 4; *Drexler v. Greater Cleveland Regional Transit Auth.* (1992), 80 Ohio App.3d 367, 609 N.E.2d 231. A judgment entered after the one year period is not a judgment as to " 'fewer than all the claims or parties' " just because it does not include the John Doe parties, so it may be considered final. Id. at 369, 609 N.E.2d 231, quoting Civ.R. 54(B).

{¶ 6} Here, FirstEnergy filed its action on November 20, 2006, and the court granted the city's summary judgment motion on May 13, 2008. Because the one-year period for naming and serving the John Does had expired, the judgment rendered as to the city was final and appealable, and we now consider the merits of the appeal.

{¶ 7} FirstEnergy's claims were based upon three incidents: the first incident occurred on Old Brecksville Road near I–480 in December 2003; the second incident occurred near West 16th Street and Clark Avenue on January 22, 2004; and the third incident occurred near East 19th Street and Superior Avenue on April 27, 2004. For all three incidents, FirstEnergy claimed that equipment operated by the city's water department resulted in damage to its underground facilities. Alternatively, FirstEnergy alleged that the city's water department failed to properly maintain its underground facilities.

{¶ 8} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of

the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment was made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 9} The city argued in its motion for summary judgment that First-Energy could not overcome the city's grant of immunity. We agree.

{¶ 10} The application of sovereign immunity to a political subdivision pursuant to Chapter 2744 of the Ohio Revised Code is governed by a three-tiered analysis. The Ohio Supreme Court set forth the analysis in *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9:

{¶ 11} "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B) * * *.

{¶ 12} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *

{¶ 13} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." (Citations omitted.) Id. at ¶ 14–16, citing *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7–9.

{¶ 14} For purposes of immunity under R.C. Chapter 2744, "governmental function" is defined by R.C. 2744.01(C), and "proprietary function" is defined by R.C. 2744.01(G).

{¶ 15} The three instances that formed the basis of FirstEnergy's complaint involved proprietary functions. (See R.C. 2744.01(G)(2)(c), providing that "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, * * * a municipal corporation water supply system," is a proprietary function.) The city is "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). A defense under R.C. 2744.03 may apply, however.

{¶ 16} The city argues that the defense under R.C. 2744.03(A)(5) applies, while FirstEnergy contends that it does not. The section provides that a political subdivision is immune from liability with respect to a governmental or proprietary function "if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 17} In regard to the first two incidents (December 2003 and January 22, 2004 water main breaks), the city submitted the affidavits of the two unit leader operators who worked on the respective projects. They both averred that they "were called to make an emergency repair to a bad water main break" and detailed the damage that the breaks had caused and their efforts to minimize further damage.

{¶ 18} In opposition, FirstEnergy submitted the affidavit and expert report of a former employee of the city of Cleveland Heights Water Department, who offered the following opinion:

{¶ 19} "In my professional opinion, damage to FirstEnergy/Cleveland Illuminating Company['s] underground ducts may have been averted or lessened by better maintenance, inspection, and conduct by the City of Cleveland."

{¶ 20} In regard to the third incident (April 27, 2004 excavation to repair a water leak), the city submitted the affidavit of its unit leader operator who was in charge of the work performed that day. The operator averred that he and his team were aware of FirstEnergy's vault and "used a backhoe and then handdug to expose [the] FirstEnergy vault" and that in doing so, they "noted that the FirstEnergy vault's concrete was in poor condition and was falling off from its ducts." He further averred that the city "notified FirstEnergy of this condition and they came out to make repairs to their cable." Also, according to the operator, "[a]t no time did [his] crew or [he] strike FirstEnergy's vault."

{¶ 21} In opposition, FirstEnergy submitted the affidavit and expert report of the foreman from the company that FirstEnergy contracted with for the repairs. The foreman acknowledged that "[t]he concrete on [FirstEnergy's] subway was not in good condition." According to the foreman, "once this was observed the City of Cleveland should have stopped work and called FirstEnergy/Cleveland Illuminating Company to properly support the subway." The foreman also opined that "[t]he City of Cleveland did not adequately support the subway and the weight allowed it to sag and cause damage." The foreman further concluded that "the damage to the subway and cable was made by mechanized equipment not by hand or shovel. It could have been a backhoe or jackhammer."

{¶ 22} The determinative issues in this case under R.C. 2744.03(A)(5) are whether the city's actions were done within its exercise of judgment or discretion, and if so, whether that judgment or discretion was exercised with a malicious purpose, in bad faith, or in a wanton or reckless manner. The record before us demonstrates that the city acted within its exercise of judgment or discretion, and the exercise was not done with a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 23} This court recently considered R.C. 2744.03(A)(5) in two cases: *Ohio Bell Tel. Co. v. Digioia–Suburban Excavating, L.L.C.*, Cuyahoga App. Nos. 89708 and 89907, 2008-Ohio-1409, 2008 WL 802641, and *FirstEnergy Corp. v. Cleveland,* 179 Ohio App.3d 280, 2008-Ohio-5468, 901 N.E.2d 822. In *Ohio Bell,* several utility companies sued the city, alleging that its water department acted negligently when stopping a water leak because it failed to shut off water to the correct water main and caused damage to the companies' equipment. This court held that the lack of an allegation that the city acted with a malicious purpose, in bad faith, or in a wanton or reckless manner entitled the city to governmental immunity as a matter of law. Id. at ¶ 41–42.

{¶ 24} Similarly, in *FirstEnergy,* the company alleged that the city's water department negligently excavated and damaged the company's underground utilities and equipment. This court stated:

{¶ 25} "FirstEnergy's complaint made no allegation that the city's employees acted with 'malicious purpose, in bad faith, or in a wanton or reckless manner.' Moreover, at no point in its opposition to summary judgment did FirstEnergy offer any evidence of reckless or malicious conduct. Its expert could only state that 'the City of Cleveland should have been more timely in shutting down the water leaks,' that it 'should have equipped its trucks with line valve maps and compressors,' and that it 'should have closed off the main beyond the seven valves * * * to shut-off as quickly as possible.' * * * None of these statements goes beyond the ordinary negligence standard of care, and thus fall outside the heightened care standards necessary to impose liability under R.C. 2744.03(A)(5). Consistent with *Ohio Bell,* we conclude that the city was entitled to sovereign immunity as a matter of law on the negligence claims for incidents three and four." *FirstEnergy,* 179 Ohio App.3d 280, 2008-Ohio-5468, 901 N.E.2d 822, at ¶ 19.[1]

{¶ 26} In determining what constitutes the "exercise of judgment or discretion," the Second Appellate District has stated the following:

---

1. Neither *Ohio Bell* nor *FirstEnergy* specifically addressed the "exercise of judgment or discretion" aspect of R.C. 2744.03(A)(5). Rather, this court impliedly found that the actions (i.e., the city's work on water lines) were the "exercise of judgment or discretion" and

{¶ 27} "Routine decisions requiring little judgment or discretion are not covered by [R.C. 2744.03(A)(5)]. In our view, nor are those decisions which involve inadvertence, inattention, or unobservance. Some positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved is required in order to demonstrate an exercise of discretion for which R.C. 2744.03(A)(5) confers immunity from liability on a political subdivision." (Citation omitted.) *Addis v. Howell* (2000), 137 Ohio App.3d 54, 60, 738 N.E.2d 37.

{¶ 28} Here, the record demonstrates as to the first two incidents that each situation was an "emergency" because there had been a "bad" break to a main water line. The third situation involved a leak in a pipe. The city exercised its judgment or discretion in repairing the breaks and leak. The decisions involved regarding the repairs were not "[r]outine decisions requiring little judgment." Rather, the city's work involved "[s]ome positive exercise of judgment that portray[ed] a considered adoption of a particular course of conduct in relation to an object to be achieved." *Addis,* 137 Ohio App.3d at 60, 738 N.E.2d 37.

{¶ 29} Having held that the city's work constituted the exercise of judgment or discretion, we consider whether in exercising its judgment or discretion, the city acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 30} Similar to *Ohio Bell* and *FirstEnergy,* there was no evidence, or even allegation that the city's judgment was exercised with a malicious purpose, in bad faith, or in a wanton or reckless manner. Accordingly, the city was entitled to immunity under R.C. 2744.03(A)(5) as to all three incidents, and the first and second assignments of error are overruled.

{¶ 31} For its third assigned error, FirstEnergy argues that the trial court erred in granting summary judgment to the city in regard to FirstEnergy's trespass and nuisance claims. Specifically, FirstEnergy argues that "[t]he trespass claim arose from Defendant–Appellee's negligent act or omission in performing a proprietary function[,] thus, invoking R.C. 2744.02(B)(2)." This court addressed this same argument in *FirstEnergy* :

{¶ 32} "The flaw in FirstEnergy's argument is that it maintains that the city's trespass to its equipment arose from the city's 'negligent act or omission in performing a proprietary function * * *.' At no point, however, did FirstEnergy allege that the city carried out that proprietary function with 'malicious purpose, in bad faith, or in a wanton or reckless manner' as required by R.C. 2744.03(A)(5).

---

specifically focused on the mental status aspect of R.C. 2744.03(A)(5) (i.e., whether the city exercised its discretion "with malicious purpose, in bad faith, or in a wanton or reckless manner").

{¶ 33} "In reaching this decision, we distinguish *West 11th Street Partnership v. Cleveland* (Feb. 8, 2001), Cuyahoga App. No. 77327, 2001 WL 112121, in which we held that sovereign immunity did not apply against the city for exfiltrations from its sewer systems. Noting that there had been competent, credible evidence to show that the exfiltrations occurred because of a lack of maintenance of a sewer system, we held that R.C. 2744.03(A)(5) did not apply. Id. at *5. This holding resulted because the city's decision of whether or not to engage in sewer maintenance did not involve the use of equipment, but merely a judgment on when such maintenance should occur.

{¶ 34} "In the present case, the alleged trespass to FirstEnergy's property occurred while the city's workers used excavating equipment to find the source of water leaks. This was not a question of whether maintenance should be performed, but a question of how the city used its equipment to make repairs to broken water lines. Unlike *West 11th Street Partnership*, the city's employees * * * were required to exercise judgment in the use of the equipment employed to stop the water leaks. We conclude that the court did not err by granting summary judgment on the trespass/nuisance claims." *FirstEnergy* at ¶ 21–23.

{¶ 35} Similarly, in this case, the city used its equipment to repair the breaks and leak. There was no allegation or evidence that in doing so, the city acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Therefore, the third assignment of error is overruled.

Judgment affirmed.

KILBANE, P.J., and STEWART, J., concur.