[Cite as *Baker v. Mansfield*, 2021-Ohio-2476.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| CYNTHIA BAKER | JUDGES:<br>Hon. William B. Hoffman, P. J. |
|     Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 20 CA 77 |
| CITY OF MANSFIELD, OHIO | |
|     Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common
Pleas, Case No. 19 CV 398N

JUDGMENT:                 Affirmed

DATE OF JUDGMENT ENTRY:      July 19, 2021

APPEARANCES:

For Plaintiff-Appellant

JAMES H. BANKS
Post Office Box 40
Dublin, Ohio 43017

For Defendant-Appellee

JAMES F. MATHEWS
TONYA J. ROGERS
ADAM J. ARES
BAKER, DUBLIKAR, BECK,
WILEY & MATHEWS
400 South Main Street
North Canton, Ohio 44720

CHRISTOPHER L. BROWN
DEPUTY LAW DIRECTOR
30 North Diamond Street
Mansfield, Ohio 44902

*Wise, J.*

{¶1}　Appellant Cynthia Baker appeals the November 10, 2020, Judgment Entry of the Richland County Court of Common Pleas granting summary judgment in favor of Appellee City of Mansfield.

## STATEMENT OF THE FACTS AND CASE

{¶2}　This case arises from a water main break which occurred on December 5, 2018. The following facts, taken from the record, are not in dispute:

{¶3}　At approximately 6:04 a.m. on December 5, 2018, the City of Mansfield ("City") Police Dispatch Department received a call of a possible water main break at the intersection of North Walnut Street and West Third Street in the City of Mansfield, Ohio. (Affidavit of David Remy, ¶ 5). The potential water main break was reported to the City of Mansfield Public Works Department at 6:05 a.m. A foreman from the Water Repair Department was sent to investigate and upon arriving at the scene, determined the underground water main erupted, causing a crater in North Walnut Street which resulted in water flooding the crater and overflowing onto the street. (Remy Aff. ¶¶ 5, 8). A crew from the Water Repair Department was assembled and dispatched to the scene to shut off the water main. (Remy Aff. ¶ 9). Once the water was shut off, the crew began pumping water out of the hole created by the broken water main. Due to the significant volume of water released by the broken water main, the Water Repair Department was forced to utilize every pump available in the City. (Remy Aff. ¶10).

{¶4}　Once the water was pumped out of the area, the crew commenced repairing the broken water main. As the water was completely shut off for the surrounding area and there was a large hole created by the water main break, the Water Repair Department

worked for nearly 20 hours straight until approximately 3:00 a.m. on December 6, 2018, to have the water main repaired so the water could be turned back on for area businesses. (Remy Aff. ¶12).

{¶5} Additionally, it took approximately 16 tons of gravel to fill the hole created by the water main break. (Remy Aff. ¶13). As the hole was filled but the street was not yet resurfaced, the Water Repair Department blocked off the area until the Street Department was available to pave the area. Due to the weather and other pending projects, the Street Department repaved the area on December 13, 2018. (Remy Aff. ¶17).

{¶6} Appellant Cynthia Baker is the owner of real property located at 46 N. Walnut Street, Mansfield, Ohio. She maintains businesses at this location known as Downtown Wigs and Downtown Beauty Salon. (Complaint ¶3). Appellant Baker alleges that on the morning of December 5, 2018, she learned of a broken water main near her business. (Comp. ¶7). She states that upon arriving, she discovered water flowing through the basement walls of her business with approximately four feet of accumulation in the basement. (Baker Affidavit ¶6). Portions of the furnace and hot water tank were submerged in water. The basement walls were bulging, and several foundational bricks had been knocked out of place. (Baker Aff. ¶7). Appellant had to engage water removal services. (Baker Aff. ¶9). As a result of the water, Appellant lost property that she had stored in the basement, the furnace and hot water tank were inoperable, and damage occurred to the foundation of the property. (Baker Aff. ¶9). The Plaintiff had to close her business for a time while the water was removed and repairs were made. (Baker Aff. ¶¶12, 13).

**{¶7}** On February 15, 2019, Appellant Baker submitted a formal claim's complaint to the City of Mansfield Claims Committee. The claim sought damages in the amount of approximately $14,500.00. Because the claim exceeded the $10,000 threshold for a claim to be considered by the City Claims Committee, the claim was turned over to the City of Mansfield's Risk Pool Carrier, Public Entities Risk Services of Ohio, Inc. (PERSO), which investigated the claim.

**{¶8}** Following its investigation, PERSO determined there was no liability on the part of the City of Mansfield and denied coverage. On March 29, 2019, PERSO issued a letter to the Appellant notifying her of the denial.

**{¶9}** On June 4, 2019, Appellant filed the Complaint which is the basis of this action. Said Complaint asserts five alleged causes of action: (1) a claim for the City's denial of her formal Complaint, which Appellant alleges was done "knowingly, intentionally, negligently, willfully and wantonly and with reckless disregard for the rights of appellant and the safety of the plaintiff." (Comp. ¶15); (2) a claim for negligence wherein Appellant alleges "the defendant was aware of the propensity for destruction of and/or danger to the property of the plaintiff but acted and/or failed to act in reckless disregard for the same." (Comp. ¶19); (3) a claim for negligent hiring, failure to train, or failure to supervise the Water and Sewer Departments (Comp. ¶¶22-23); (4) negligence (Comp. ¶28); and (5) a claim that the City acted willfully, wantonly or recklessly. (Comp. ¶31).

**{¶10}** On September 3, 2020, Appellee City of Mansfield filed a Motion for Summary Judgment.

**{¶11}** On October 13, 2020, Appellant filed a response to the Motion for Summary Judgment.

**{¶12}**  On October 20, Appellee filed its reply.

**{¶13}**  By Judgment Entry filed November 10, 2020, the trial court granted Appellee City of Mansfield's Motion for Summary Judgment.

**{¶14}**  Appellant now raises the following errors for review:

## ASSIGNMENTS OF ERROR

**{¶15}** "I. THE TRIAL COURT ERRED IN DISREGARDING PLAINTIFF'S AFFIDAVIT AND THE DOCUMENTS ATTACHED THERETO SUBMITTED IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

**{¶16}** "II. THE TRIAL COURT ERRED IN DETERMINING THAT STATUTORY IMMUNITY UNDER R.C. CHAPTER 2744 SHIELDS DEFENDANT CITY OF MANSFIELD, OHIO FROM LIABILITY.

**{¶17}** "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS SUCH THAT THE JUDGMENT BELOW MUST BE REVERSED."

### Summary Judgment Standard

**{¶18}**  Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

{¶19} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

{¶20} It is based upon this standard that we review Appellant's Assignments of Error.

**I.**

**{¶21}** In her first assignment of error, Appellant argues the trial court erred in disregarding her Affidavit and documents attached thereto submitted in opposition to Appellee's motion for summary judgment. We disagree.

**{¶22}** Pursuant to Civ.R. 56(E), affidavits submitted in support of and opposition to summary judgment must be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated in the affidavit." Information in affidavits that is not based upon such personal knowledge and which does not fall within any of the permissible exceptions to the hearsay rule may be properly disregarded by the trial court. *Cincinnati Ins. Co. v. Thompson & Ward Leasing Co.,* 158 Ohio App.3d 369, 374, 2004–Ohio–3972, ¶ 13, citing *Pond v. Carey Corp.* (1986), 34 Ohio App.3d 109, 111.

**{¶23}** Further, we do not find that Appellant's employment with the City as the Community Development Director prior to 2014 creates a reasonable inference that she was privy to the inner workings of the Water Department at any time, let alone six to seven years later.

**{¶24}** Without personal knowledge regarding the inner-workings of the City of Mansfield Water Department and what the City did not know, Appellant's affidavit cannot be considered admissible evidence to prove her claims.

**{¶25}** Additionally, the trial court found that the documents attached to the affidavit either lacked foundation (a list of claims allegedly paid by the City, compiled by Appellant) or were inadmissible hearsay (a newspaper article). The court likewise disregarded a copy of a letter and check put forth as an attempt to establish a prior water problem in

2017, finding that said documents failed to indicate that the City of Mansfield had any involvement as to that alleged water problem.

**{¶26}** Based on the foregoing, we find the trial court did not err in disregarding Appellant's affidavit in this matter.

**{¶27}** Appellant's first assignment of error is overruled.

## II.

**{¶28}** In her second assignment of error, Appellant argues that the trial court erred in finding that Appellee was entitled to statutory immunity. We disagree.

**{¶29}** Questions of immunity are matters of law, so they are particularly apt for resolution by way of summary judgment. *FirstEnergy Corp. v. Cleveland*, 179 Ohio App.3d 280, 2008-Ohio-5468, 901 N.E.2d 822, ¶ 7 (8th Dist.).

**{¶30}** The Ohio Supreme Court has outlined a three-tier analysis for determining whether a political subdivision is entitled to immunity under R.C. Chapter 2744.

> The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B). The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * * If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses

in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. (Citations omitted.)

{¶31} *Colbert v. Cleveland,* 99 Ohio St.3d 215, 2003–Ohio–3319, 790 N.E.2d 781, ¶ 7–9.

{¶32} R.C. §2744.01(G)(2)(c) provides:

(G)(1) "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

(2) A "proprietary function" includes, but is not limited to, the following:

***

(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a bus line or other transit company, an airport, and a municipal corporation water supply system;

{¶33} The City concedes that R.C. §2744.01(G)(2)(c) includes the Water Department's operation as a proprietary function and that the city is "liable for injury, death, or loss to person or property caused by the negligent performance of acts by their

employees with respect to proprietary functions of the political subdivision." R.C. §2744.02(B)(2).

**{¶34}** The City argues that the defenses found in R.C. §2744.03(A)(3) and (5) shield it from liability. R.C. §2744.03(A)(3) and (5) provide, in pertinent part:

(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

\*\*\*

(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

**{¶35}** The above defenses extend to the exercise of judgment or discretion by employees of a political subdivision. *Id.* at ¶32.

**{¶36}** Under R.C. §2744.03(A)(3), immunity exists even if the discretionary actions were done recklessly or with bad faith or malice. *Elston v. Howland Local Schools,* 113 Ohio St.3d 314, 2007–Ohio–2070, 865 N.E.2d 845.

**{¶37}** In *FirstEnergy Corp. v. Cleveland,* 182 Ohio App.3d 357, 2009–Ohio–2257, 912 N.E.2d 1156, the court found that the city water department's work with regard to

repairing water main breaks and a water leak, which resulted in damage to underground facilities, involved the exercise of judgment or discretion. In the absence of evidence showing the city acted with a malicious purpose, in bad faith, or in a wanton or reckless manner, the court found the city was entitled to immunity under R.C. §2744.03(A)(5). *Id.* at ¶ 23, 912 N.E.2d 1156. Courts have made similar rulings in *FirstEnergy Corp. v. Cleveland,* 179 Ohio App.3d 280, 2008–Ohio–5468, 901 N.E.2d 822 (finding how the city used its equipment to make repairs to broken water lines required the exercise of judgment in stopping the water leaks); and *Ohio Bell Tel. Co. v. Digioia–Suburban Excavating,* Cuyahoga App. Nos. 89708 and 89907, 2008–Ohio–1409 (finding city was entitled to immunity for employee's alleged negligence in turning off the wrong water main when a leak occurred). *See also Williams v. Brewer*, 8th Dist. Cuyahoga No. 93829, 2010-Ohio-5349.

**{¶38}** The record demonstrates that the City, upon notification of the water main break, swiftly deployed manpower and equipment to repair the water hydrant hub and some twelve-inch pipe. The City then filled the hole with sixteen tons of gravel and a week later re-surfaced the road.

**{¶39}** The evidence in this case demonstrates that the city dispatched its employees immediately upon learning of the break. That it took several hours after notification of the leak to locate the shut-off valve does not demonstrate that the city did not positively exercise discretion and judgment in trying to stop the leak as expeditiously as possible. Despite Appellant's arguments otherwise, the city did not fail to act, and we find no unexplained and unjustified delay in responding to the water main break or, in light of the difficulty of the operation, in shutting down the valves to isolate the leak. Here, we

find that the employees of the Water Department exercised their discretion in deciding how to perform the repair of the water main and in their selection of the equipment and materials used.

**{¶40}** Appellant has provided no evidence, other than her own self-serving affidavit, that the city failed to train its employees, that it wrongfully denied her claims or that it has the capability or ability to perform regular inspections of the underground water pipes or to respond to issues prior to a leak or a break occurring. There is no evidence demonstrating a requirement for a water utility in the state of Ohio to implement a maintenance management system. And in any event, whether to implement such a system would be a discretionary policy decision subject to immunity under R.C. §2744.03(A)(3), which provides immunity where an employee's actions or failure to act were within the policy-making, planning, or enforcement powers of the duties and responsibilities of the employee's office or position.

**{¶41}** The city's response to the water main break that occurred in this case was not merely routine; it required the exercise of discretion and judgment as to how to use equipment and materials, and there is a lack of malicious purpose, bad faith, or wanton or reckless conduct. Accordingly, the city is immune from liability under R.C. §2744.03(A)(5), and the trial court properly granted the city's motion for summary judgment.

**{¶42}** We find Appellant's second assignment of error not well-taken and hereby overrule same.

**III.**

**{¶43}** In her third assignment of error, Appellant argues that the trial court erred in granting Appellee's motion for summary judgment. We disagree.

**{¶44}** In the case *sub judice*, the trial court granted summary judgment in favor of Appellee, finding that the only evidence submitted by Appellant to establish a genuine issue of material fact was the self-serving affidavit of Appellant. The trial court found, as set forth above in our analysis under Assignment of Error I, that the averments contained in the affidavit were not based on personal knowledge and that same relied on hearsay or speculation.

**{¶45}** In *Patterson v. Licking Twp.*, 5th Dist. Licking No. 17-CA-3, 2017-Ohio-5803, ¶ 16, this Court, citing *Bank of New York v. Bobo*, 4th Dist. Athens No. 14CA22, 2015–Ohio–4601, 50 N.E.3d 229, held:

A self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact. *Wells Fargo Bank v. Blough*, 4th Dist. Washington No. 08CA49, 2009–Ohio–3672, 2009 WL 2220065, ¶ 18; *Deutsche Bank Natl. Trust Co. v. Doucet*, 10th Dist. Franklin No. 07AP–453, 2008–Ohio–589, 2008 WL 384234, ¶ 13 ("We also find that Doucet's self-serving affidavit, which was not corroborated by any evidence, is insufficient to establish the existence of material issues of fact."). " 'To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims and defining and narrowing

issues for trial.' " [Internal quotations omitted.] *Blough* at ¶ 18, quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003–Ohio–7190, 2003 WL 23094976, ¶ 36.

**{¶46}** "In Ohio, a moving party's contradictory affidavit cannot be used to obtain a summary judgment." *Sims v. Coley*, 5th Dist. Licking App. No. 18 CA 00007, 2018-Ohio-3703, ¶24.

**{¶47}** Here, Appellant presented no evidence outside of her own statements and inadmissible hearsay to demonstrate negligence. Thus, construing the evidence most strongly in favor of Appellant, we find that the City was entitled to summary judgment in this matter.

**{¶48}** We find Appellant's third assignment of error not well-taken and hereby overrule same.

**{¶49}** Accordingly, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.

By: Wise, J.

Delaney, J., concurs.

Hoffman, P. J., concurs separately.

*Hoffman, P.J., concurring*

{**¶50**} I concur in the majority's overall analysis and disposition of Appellant's three assignments of error.

{**¶51**} I write separately only to note my disagreement with the majority's blanket proposition of law a self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact.  (Maj. Op. at ¶45).[1] Nevertheless, under the circumstances in this case, I agree Appellant's evidence is insufficient to create a genuine dispute of material fact.

---

[1] For a similar result see my concurring opinions in *M & T Bank v. Woods*, 5th Dist. Delaware No. 17 CAE 07 0050, 2017-Ohio-8500, ¶37 and *Combs v. Spence*, 5th District Licking No. 2006 CA 0034, 2007-Ohio-2210, ¶36.