[Cite as *Meyer vs. Countrytyme Land, L.L.C.*, 2025-Ohio-151.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| GERHARD MEYER, ET AL. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiffs-Appellants | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| COUNTRYTYME LAND LLC, ET AL. | : | Case No. 2024 CA 00014 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2022 CV 00087


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:


APPEARANCES:

For Plaintiffs-Appellants                    For Defendants-Appellees

KARIN L. COBLE                               CHARLES H. BENDIG
316 North Michigan Avenue                    4937 West Broad Street
Suite 600                                    Columbus, OH  43228
Toledo, OH  43604

*King, J.*

{¶ 1}   Plaintiffs-Appellants, Gerhard Meyer, Lyn Meyer, Kurtis Meyer, Amanda Schrieber, and three minor children, appeal the March 28, 2024 entry of the Court of Common Pleas of Fairfield County, Ohio, granting summary judgment to Defendants-Appellees, Countrytyme Land LLC, Mark M. Graham, Rick Hughes, and five John/Jane Does.  We affirm the trial court.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   On March 26, 2018, Gerhard and Lyn Meyer purchased 45.89 acres of land from Countrytyme known as "Patriot's Lodge on Wayne" for the benefit of their son, Kurtis Meyer, and his wife, Amanda Schrieber, and her two minor children.  Countrytyme is a company in the business of purchasing, developing, and selling real property.  The company is owned by a licensed broker (James Wilcox) and managed by Graham; Hughes is an employee.

{¶ 3}   Prior to Countrytyme owning the property, the property was owned by Leroy Collier.  Collier owned 550 acres.  He obtained a permit to mine for coal on 33.1 acres, but only 2.7 acres were actually mined.  From 2013 to 2015, the Ohio Department of Natural Resources ("ODNR") issued reports finding Collier was not in compliance with surface and ground water monitoring and finding the presence of acid/toxic materials in the watershed.  In 2014, Collier had notified the ODNR it was ceasing mining operations and was beginning the reclamation process.

{¶ 4}   Countrytyme was interested in purchasing the property and met with representatives from the ODNR to discuss the mine.  Prior to the purchase, the mining permit was closed, but the ODNR wanted the mining pit filled in and a stable, graded slope created.  Because Collier was very ill, Countrytyme went through with the purchase

in August 2016 and then completed the work a couple months later for Collier. The ODNR inspected the process and approved the work and Countrytyme was reimbursed by Collier's estate for the work on the property. The ODNR approved Countrytyme's request to change the land usage to Residential. The property contained a house which was next to the mining pit. Countrytyme made improvements to the house and then listed the property, stating that a private coal mine had existed on the property from 2012, but the mine was closed and the property reclaimed in 2016 and out of the 45.89 acres of land offered for sale, 2.7 acres was under a reclamation bond. A home inspection was completed prior to the sale by a home inspector chosen by appellants. The home inspection listed numerous issues and potential problems with the home, but appellants did not ask appellees to make any repairs and went ahead with the purchase.

{¶ 5} Kurtis Meyer, Schrieber, and the two minor children, along with numerous animals, moved onto the property on March 26, 2018, the day the sale was completed. They wanted a sanctuary for twenty-two rescue therapy horses. The horses drank the surface water on the property. As alleged by appellants, in April 2018, one of the horses died. In June 2018, Meyer, Schrieber, and the two children started experiencing neurological issues. In August, November, and December, a horse died in each month. All presented neurological symptoms. A baby born to the couple in December 2018 had developmental delays. The family continued to experience neurological issues through 2019, and moved from the property in May 2020. In all, eight horses died and the family has continued health issues and developmental delays.

{¶ 6} The reclamation bond was released in May of 2019. Appellants were aware of the release request and did not object.

{¶ 7}   On March 3, 2022, appellants filed a complaint against appellees alleging negligence, unjust enrichment, breach of fiduciary relationship, and fraudulent misrepresentation, nondisclosure, or concealment.  Appellants alleged toxins in the property from the mining operation and mold in the home due to covered-up water damage caused personal injuries and property damage.  Appellants also alleged subsidence and landslides on the property caused by appellees' shoddy filling in of the mining pit on the property.  Appellants sought compensatory and punitive damages and attorney fees.

{¶ 8}   On June 1, 2022, appellants filed an amended complaint, adding a claim for breach of implied warranty.

{¶ 9}   On August 18, 2023, the trial court issued a case scheduling order setting a discovery cutoff date of January 12, 2024.  A jury trial was scheduled for May 21, 2024, and dipositive motions were to be filed by December 15, 2023.

{¶ 10} On September 14, 2023, appellants' counsel withdrew as counsel.

{¶ 11} On September 19, 2023, appellees filed a motion for summary judgment, claiming in part there was no evidence to establish they acted fraudulently and negligence was not an issue because the matter involved a contract dispute.  Appellants filed a pro se memorandum in opposition with numerous exhibits on November 15, 2023, claiming fraudulent behavior.

{¶ 12} On February 21, 2024, appellants filed a pro se motion to join James Wilcox, Countrytyme Land Specialists LLC, and Countrytyme Realty LLC as defendants.

{¶ 13}   On March 28, 2024, the trial court filed an entry granting appellees' motion for summary judgment, finding no genuine issues of material fact to exist.

{¶ 14} Appellants filed an appeal with the following assignments of error:

I

{¶ 15} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO APPELLANTS' CLAIM OF NEGLIGENT MISREPRESENTATION."

II

{¶ 16} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO THE FRAUDULENT MISREPRESENTATION CLAIM."

I, II

{¶ 17} In their two assignments of error, appellants claim the trial court erred in granting summary judgment to appellees on their negligent misrepresentation and fraudulent misrepresentation claims.  We disagree.

{¶ 18} Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Regarding summary judgment, the Supreme Court stated the following in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448 (1996):

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.  *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

{¶ 19} In *Leech v. Schumaker,* 2015-Ohio-4444, ¶ 13 (5th Dist.), this court explained the following:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall

be entered against the nonmoving party."  The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 20} As an appellate court reviewing summary judgment motions, we stand in place of the trial court and review the issues de novo, under the same standards and evidence as the trial court.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

## NEGLIGENT MISREPRESENTATION

{¶ 21} Appellants argued "negligence is not an issue in this case because this is a contract dispute."  Defendants' Motion for Summary Judgment at 6.  Appellees quoted this statement and argued: "This is not a contract dispute.  The issue at hand is not negligence but the active fraud performed by Country Tyme."  Plaintiffs' Memorandum in Opposition at Plaintiffs' Response to Defendants' Argument No. 4.  Everything appellants argued pertained to fraud on the part of appellees.

{¶ 22} As found by the trial court, "[t]he doctrine of *caveat emptor* bars a cause of action based upon negligent misrepresentation."  *Kossutich v. Krann*, 1990 WL 118705, *3 (8th Dist. Aug. 16, 1990).  (Emphasis in original.)  Under the doctrine, a buyer is precluded from recovery for a structural defect in real estate where "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor."  *Layman v. Binns*, 35 Ohio St.3d 176 (1988), syllabus. The doctrine only applies to those defects which are readily discoverable upon an inspection, not latent defects that are not readily discoverable.  *Kerbler v. Biltwell Contracting LLC,* 2024-Ohio-5607, ¶ 58 (5th Dist.) (King, J., dissenting), citing

*Decaestecker v. Belluardo*, 2008-Ohio-2077 (2d Dist.). Sellers of real property have no duty to inspect their property or acquire knowledge regarding defects on their property. *Roberts v. McCoy*, 2017-Ohio-1329, ¶ 17 (12th Dist.).

{¶ 23} Here, the purchase agreement between the parties stated the offer was "contingent upon home inspection revealing no more than $10,000 of necessary repairs" and "Buyer has examined all property involved and, in making this offer, is relying solely upon such examination with reference to the condition, character and size of land and improvements and fixtures, if any." Exhibit A attached to Defendants' Motion for Summary Judgment. Appellants had a home inspection done by Assurance Home Inspection which revealed multiple issues, but appellants did not ask Countrytyme to make any repairs and in fact went through with purchasing the property. Exhibit F attached to Defendants' Motion for Summary Judgment.

{¶ 24} These provisions in the purchase agreement, coupled with the doctrine of caveat emptor, barred any negligence claims based on appellees' failure to disclose unless the nondisclosures rose to the level of fraud. *See Williams v. Brown,* 2005-Ohio-5301, ¶ 42 (5th Dist.); *Kossutich* at *2.*

## FRAUDULENT MISREPRESENTATION

{¶ 25} In their amended complaint, appellants alleged appellees failed to disclose or intentionally concealed known material defects to the property caused by the mining operations and water damage and mold. They alleged appellees' representations that the property was safe were false and appellees knew the representations were false. As a result, they suffered serious healthcare issues, loss of livestock, property damage, monetary damage, and the loss of the use and enjoyment of their property.

{¶ 26} We note a residential property disclosure form is not included as an exhibit. There are conflicting arguments as to whether one was ever filled out; neither party could produce one. Under R.C. 5302.30(C), "every person who intends to transfer any residential real property . . . by sale . . . shall complete all applicable items in a property disclosure form . . . and shall deliver . . . a signed and dated copy of the completed form to each prospective transferee or prospective transferee's agent as soon as is practicable." But subsection (K)(1) states:

Except as provided in division (K)(2) of this section, but subject to divisions (J) and (L) of this section, a transfer of residential real property that is subject to this section shall not be invalidated because of the failure of the transferor to provide to the transferee in accordance with division (C) of this section a completed property disclosure form as prescribed under division (D) of this section.

{¶ 27} Appellants argue they relied on Countrytyme's assertions that the mine was closed and reclaimed in 2016 and Hughes's oral assurances that the property was safe for residential and livestock use. *See* Amended Complaint at ¶ 70; Appellants' Brief at 20.

{¶ 28} In order to establish fraud, a buyer must demonstrate all of the following:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to

whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Burr v. Board of County Commissioners of Stark County*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus.

{¶ 29} In their motion for summary judgment, appellees argued at all times appellants had the opportunity to inspect the property and in fact had a home inspection done. Countrytyme informed appellants of the prior mine on the property and appellants had access to the ODNR file. Graham depo. at 35. The ODNR inspected appellees' filling in and grading of the mining pit and released the reclamation bond in 2019.

{¶ 30} Prior to purchasing the property from Collier, Countrytyme met with representatives from the ODNR to discuss the mine as it wanted to ensure the property was reclaimed before the purchase. Graham depo. at 14; Hughes depo. at 19. Although the mining permit was closed, the ODNR wanted the mining pit filled in and a stable, graded slope created. Graham depo. at 14; Hughes depo. at 25. Countrytyme purchased the property in August 2016 and then completed the required work a couple months later; the ODNR inspected the process and approved the work. Graham depo. at 15-16; Hughes depo. at 31, 40; Exhibit E attached to Defendants' Motion for Summary Judgment (Letter from the ODNR to Kurtis Meyer) ("On the day of the final release inspection, the site was vegetated and stable"). Countrytyme made improvements to the house on the property and then listed the property, stating that a private coal mine had existed on the

property from 2012, but the mine was closed and the property reclaimed in 2016. Exhibit B attached to Defendants' Motion for Summary Judgment (Listing Preview). The record shows these are not false statements.

{¶ 31} As mentioned, the reclamation bond was released in 2019 after appellants purchased the property. Exhibit E attached to Defendants' Motion for Summary Judgment. Hughes advised appellants to deny the bond release "in case there is settlement or any problems that has occurred from the reclamation of the mine." Exhibit 16 attached to Plaintiffs' Memorandum in Opposition. But appellants did not object to releasing the bond.

{¶ 32} Appellants had a home inspection done by Assurance Home Inspection which revealed multiple issues including a large amount of "bat guano" in the attic which could be a "health concern." Exhibit F attached to Defendants' Motion for Summary Judgment. The basement floor was damp, but not wet, and "moisture type stains" on the roof sheathing tested dry with a moisture meter. *Id.* Mold was not indicated or listed in the inspection report. Despite numerous issues, appellants did not ask Countrytyme to make any repairs and purchased the property. Appellants could have sought water quality testing from the well, but did not do so. In their memorandum in opposition, appellants attached lab reports from 2020 indicating toxic metal contamination in soil samples, but did not submit any expert reports or affidavits to explain the results or correlate the results to water quality and/or appellants' health issues. In their motion for summary judgment, appellees attached an August 25, 2020 letter from the ODNR to Kurtis Meyer, indicating the following:

Prior to the May release you did inquire about an acidic seep located just off the permitted area near a barn. This seep existed prior to mining, and although slightly more acidic, had many of the same attributes. Acidic seeps often develop on the coal crop lines naturally. In April 2020 you once again contacted the Division regarding the seep and a slip that had developed on the reclaimed ground. Division personnel met with you on July 16, 2020 at your property where we looked at the slip area and seep. At that time, you chronicled a list of health issues your family and you had experienced since moving to the property and inquired as to the possible causes.

Ohio Revised Code allows landowners to object to the release of bonds associated with mining operations. In this case a written objection was not received. Once the final bond has been released the Division no longer has jurisdiction on the permitted area. On the day of the final release inspection, the site was vegetated and stable. Division hydrologist Laura Bibey determined the seep on the coal crop was not caused by the mining operation. The release was approved. The slip that developed on the site happened after the Division released the bond. When the maintenance period has been met and the final bond is released, property maintenance is the landowner's responsibility and no longer required of a former coal operator.

The Division has not received a complaint and has not previously encountered the health issues you described as being related to the excavation and filling in of the test pit on your property. The seep coming

off the coal seam is acidic and does contain iron, but it is not considered toxic. Acid drainages, both caused by mining and naturally occurring, are common in southeastern Ohio.

{¶ 33} In response to appellants' concern that "the dug well on the other side of the stream had high levels of lead," the letter indicated increased levels of lead in surface and/or ground water was not related to coal mining and further, the well was in an unmined area and "hydrologically isolated from the test pit area."

{¶ 34} In an affidavit attached to the motion for summary judgment, Graham averred the well on the property had been "actively in use by the previous tenant" and everyone used the well water during the rehabilitation of the property. An attached affidavit by Hughes averred a tenant was living in the home when Countrytyme purchased the property and it was his understanding the tenant "had been using the well water for many years." Hughes depo. at 60-61.

{¶ 35} Appellants submitted an August 14, 2020 email from a purported geologist, Robert Hall, to Kurtis Meyer, offering "major points of information" of the reclamation process after reviewing "the historical documents" that had been provided on the property (Phase 1). Exhibit 17 attached to Plaintiffs' Memorandum in Opposition. Many of those documents would have been when Collier owned the property. Hall stated: "We would need to proceed with Phase II Subsurface exploration to determine the extent of the impacted materials and identify the specific contaminants and their respective concentrations." There is no indication that Phase II was ever done; the exhibit does not offer any substantive information on what appellees knew or should have known or represented regarding the reclamation process.

{¶ 36} In their amended complaint, appellants alleged appellees knew of dangerous mold in the home. They alleged Countrytyme's contractor advised Countrytyme of mold issues and suggested remediation of the mold, but Countrytyme did not want to spend the money and instead covered up the damage. Appellants did not present any evidence in support of this allegation. No affidavit or deposition from the contractor was submitted; no photographs or facts were submitted to demonstrate a cover-up. In fact, in the same amended complaint, appellants alleged they did not learn of water damage until 2020 when it was revealed during a mold inspection. Yet appellants had their own approved home inspector inspect the property in January 2018; mold was not indicated. Graham never saw water intrusion in the home. Graham depo. at 34. Appellants submitted excerpts of a home inspection report Countrytyme had done in 2017 showing rotten roof sheathing and indicating possible water penetration. Exhibit 10 attached to Plaintiffs' Memorandum in Opposition. But after receiving this report, Countrytyme made repairs to the home, including putting on a new roof. Graham depo. at 30-31; Hughes depo. at 34.

{¶ 37} Other than sworn-to joint arguments in their memorandum in opposition, appellants did not file any evidentiary quality healthcare or doctor reports or affidavits with the trial court regarding the family's health issues. "A nonmoving party may not avoid summary judgment by merely submitting a self-serving affidavit contradicting the evidence offered by the moving party." *Guernsey County Community Development Corp. v. Speedy*, 2024-Ohio-1039, ¶ 58 (5th Dist.). A self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact. *Wells Fargo Bank v. Blough,* 2009-Ohio-3672, ¶ 18 (4th Dist.); *Shreves v. Meridia Health System,* 2006-Ohio-5724, ¶ 27 (8th Dist.) ("a party's unsupported and self-

serving assertions offered to demonstrate issues of fact, standing alone and without corroborating materials contemplated by Civ.R. 56, are simply insufficient to overcome a properly supported motion for summary judgment").

{¶ 38} The evidentiary evidence submitted in this case for summary judgment purposes does not support the allegations that appellees made false material representations or concealed material facts to intentionally mislead appellants or that appellees proximately caused any damage to appellants.

{¶ 39} Upon review, we do not find any genuine issues of material fact to exist; the trial court did not err in granting summary judgment to appellees.

{¶ 40} Assignments of Error I and II are denied.

{¶ 41} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By King, J.

Baldwin, J. concur and

Hoffman, P.J. concurs separately.

*Hoffman, P.J., concurring*

{¶42}  I concur in the majority's overall analysis and disposition of Appellant's two assignments of error.

{¶43}  I write separately only to note my disagreement with the majority's blanket proposition of law a self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact (Maj. Op. at ¶37).[1] Nevertheless, under the circumstances in this case, I agree Appellant's evidence is insufficient to create a genuine dispute of fact.

---

[1] For a similar result see my concurring opinions in *Baker v. Mansfield,* 2021-Ohio-2476, ¶51 (5th Dist.); *M & T Bank v. Woods,* 2017-Ohio-8500, ¶37 (5th Dist.); and *Combs v. Spence,* 2007-Ohio-2210, ¶36 (5th Dist.).