[Cite as *Kerbler v. Biltwell Contrs., L.L.C.*, 2024-Ohio-5607.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| SAMANTHA K. KERBLER, ET AL | : | JUDGES: |
|  | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiffs-Appellees | : | Hon. W. Scott Gwin, J. |
|  | : | Hon. Andrew J. King, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024CA0010 |
| BILTWELL CONTRACTING LLC, ET AL | : |  |
|  | : |  |
|  | : | OPINION |
| Defendants-Appellants |  |  |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
                             Common Pleas, Case No. 2021 CV 00642

JUDGMENT:                    Affirmed in part; Reversed and Remanded in
                             part

DATE OF JUDGMENT ENTRY:      November 26, 2024

APPEARANCES:

For Plaintiffs-Appellees          For Defendants-Appellants

THOMAS WHITE                      GREGORY A. WETZEL
5989 County Rd. 77                67 East Wilson Bridge Road, Ste. 100
Millersburg, OH 44654             Worthington, OH  43085

*Gwin, J.,*

{¶1}  Appellants Travis Van Deest and Biltwell Contracting, LLC appeal from the judgment entries of the Licking County Court of Common Pleas finding in favor of appellees Samantha Kerbler and Adam Rigley.

*Facts & Procedural History*

{¶2}  On December 3, 2019, the property located at 5100 Goose Lane in Alexandria, Ohio, was transferred via a sheriff's deed to Biltwell Contracting, LLC ("Biltwell").  The property was purchased at sheriff's sale for $150,000.  Appellees entered into a real estate purchase agreement on April 9, 2020 to purchase the home located at 5100 Goose Lane from appellants for $355,000.  Appellees were moving to be closer to their sons' high school.  Van Deest personally signed the contract and wrote the word "member" after his name.

{¶3}  A Residential Property Disclosure Form ("RPDF") was executed in connection with the sale of the property pursuant to R.C. 5302.30.  On the first page of the RPDF, where it states the section is "to be completed by owner," Van Deest lists himself as the "owner," and indicates that he is not occupying the property.  On the bottom of each page where it states "Owner's initials," the boxes each contain the letters "TV," with a date of April 8, 2020.

{¶4}  In subsection (A) of the RPDF regarding the water supply, Van Deest checked "private well" as the source of the water supply.  Van Deest was asked if he knew of any current leaks, backups, or other material problems with the water supply system or quality of the water within the past five years.  Van Deest checked the box labeled "no."  In subsection (B) of the form regarding the sewer system, Van Deest

checked "septic tank" as the nature of sewer system.  Van Deest was asked if he knew of any previous or current leaks, backups, or other material problems with the sewer system servicing the property within the past five years.  Van Deest checked the box labeled "no."  In subsection (C) of the form, Van Deest checked the box labeled "no" next to the question of whether he knew of any previous or current leaks or other material problems with the roof or rain gutters.  He also wrote "new roof 2020."

{¶5}    In subsection (D) of the RPDF regarding water intrusion, Van Deest was asked if he knew of any previous or current water leakage, water accumulation, excess moisture, or other defects to the property, including but not limited to any area below grade, basement, or crawl space.  Van Deest checked the box labeled "no."  Van Deest was also asked if he knew of any water or moisture-related damage to floors, walls, or ceilings as a result of flooding; moisture seepage; moisture condensation; ice damming; sewer overflow/backup; or leaking pipes, plumbing fixtures, or appliances.  Van Deest checked the box labeled "no."  In subsection (E) of the form regarding structural components (foundation, basement, crawl space, floors, interior and exterior walls), Van Deest checked the box labeled "no" when asked whether he knew of any previous or current movement, shifting, deterioration, material cracks/settling (other than visible minor cracks or blemishes) or other material problems with the foundation, basement/crawl space, floors, or interior/exterior walls within the past five years.

{¶6}    In subsection (G) of the form regarding mechanical systems, Van Deest checked the box labeled "no" when asked if he knew of any current or previous problems or defects with the electrical, plumbing (pipes), sump pump, fireplace/chimney, water softener, or other mechanical systems.  In subsection (K), Van Deest was asked if he

knew of any previous or current flooding, drainage, settling or grading or erosion problems affecting the property within the last five years. Van Deest checked the box labeled "no." Subsection (N) of the form asks whether there are any "other known material defects" on the property, explaining that "material defects would include any non-observable physical condition existing on the property that could be dangerous to anyone occupying the property or any non-observable physical condition that could inhibit a person's use of the property." Subsection (N) was left blank.

{¶7} The "Certification of Owner" section of the RPDF states the, "owner certifies that the statements contained in this form are made in good faith and based on his/her actual knowledge as of the date signed by the Owner. Owner is advised that the information contained in this disclosure form does not limit the obligation of the owner to disclose an item of information that is required by any other statute or law or that may exist to preclude fraud, either by misrepresentation, concealment, or nondisclosure in a transaction involving the transfer of residential real estate." Van Deest signed that portion of the form with the word "member" after his name.

{¶8} Appellees had the property inspected on April 13, 2020. Based on this inspection, appellees signed a "Request to Remedy," asking the seller to remedy certain conditions, including: installing GFCI outlets, venting the bathroom fans to the outside instead of to the attic, adding insulation in the attic, replacing the dryer vent cover, fixing the chimney cap, fixing a missing seal on the garage door, installing a door seal on the wood stove, installing a radon system, and shocking the well to get rid of bacteria in the water. Van Deest agreed to remedy these conditions, however, appellees testified they

found out some of the conditions were not fully remedied after they moved into the home. On June 25, 2020, the property was transferred via a joint survivorship deed to appellees.

{¶9} Several weeks after appellees moved into the home, appellees began having issues with the property. On July 28, 2021, appellees filed a complaint against appellants in the Licking County Court of Common Pleas, alleging breach of contract, fraudulent concealment, fraudulent misrepresentation, negligent misrepresentation, and requesting punitive damages, attorneys' fees, and a rescission of the contract. On December 10, 2021, appellees filed an amended complaint, adding State Farm Fire and Casualty Company as a defendant, and adding a subrogation count to their complaint.

{¶10} State Farm filed a cross-claim against appellants. Appellants filed a motion for summary judgment as to the State Farm cross-claim only. After the parties had fully briefed the summary judgment motion, State Farm dismissed their cross-claim against appellants. Prior to trial, appellees dismissed the negligent misrepresentation count of their complaint, and elected to go to trial only on the fraud and breach of contract claims.

{¶11} A jury trial was held on appellees' complaint beginning on May 22, 2023.

{¶12} Rebekah Mullins ("Mullins") was the real estate agent for appellees. When she viewed the home with appellees, the home was "staged," so it was move-in ready, and appeared to be maintenance-free. Mullins visited the property four times. She did not recall seeing any defects in her visual inspection. Mullins testified the listing agent for the home was Van Deest, and he was also the owner of the LLC that owned the home. On the multiple listing service that real estate agents see, Van Deest noted that he was the owner/agent of the home. Mullins went through the RPDF and testified to the answers provided on the form by Van Deest.

{¶13} Adam Hughes ("Hughes"), an employee of Servpro, personally visited the property in September of 2020. He did not know when the moisture first appeared, but, when he visited the property in September, he personally observed moisture issues in the basement. He found elevated readings of moisture that he felt needed mitigation.

{¶14} Thaddaeus Blubaugh ("Blubaugh") inspected the property for appellees on April 13, 2020. The inspection lasted approximately three hours, and he could go anywhere he wanted during that time. On that date, the ground was saturated from rain. He found the interior plumbing worked as he expected. He found a few issues, such as a lack of GFCI outlets and incorrect flashing on the chimney. On April 13, 2020, Blubaugh found the walls in the basement appeared to be newly-painted and newly-drywalled. He did not notice any water intrusion in the basement on that date. While the septic was not part of his inspection, he recommended a company called Benchmark to complete that inspection.

{¶15} Samantha Kerbler ("Kerbler") stated they looked at multiple homes in their home search, and they kept getting outbid. When they first saw the home on Goose Lane, the basement was freshly painted, and she could smell the paint fumes. However, there were no readily observable water stains when she viewed the house.

{¶16} Kerbler specifically asked for the RPDF to be written into the real estate purchase agreement because she wanted to review it. She stated she and her husband relied upon the information contained in the form. They had seen RPDF forms in the past and they would use the form to determine if they wanted to purchase the home. If a form noted issues they felt they could fix, they would look at the cost and decide if they wanted to make an offer on the home. If it was an issue or problem they determined they could

not fix, did not want to deal with, or would be too expensive to fix, they would not make an offer on that home and would move on to another home. Kerbler had the Goose Lane home inspected by Blubaugh prior to purchase and had the septic inspected separately by Benchmark, a company Blubaugh recommended.

{¶17} Kerbler testified to the issues they encountered with the property after they moved in. Accompanying her testimony were numerous photographs that Kerbler took of the various issues, and she identified and testified to each photograph. Approximately two weeks after appellees moved in, they started getting little water spots in the basement. They progressively got bigger. They first had a company come out in July of 2020 to replace the hose bibbs because they thought that is where the water was coming from.

{¶18} The well collapsed six-and-a-half weeks after appellees moved into the home. Kerbler testified there was a nylon rope wrapped around the wellhead covering a large hole (Exhibits M0, M1) when she went out to look at the well. Also, around that time, when they showered or did laundry, sewage would start coming out from underneath the wall that was drywalled in the basement. There was enough liquid that they had to Shop Vac the liquid up. Kerbler testified that sludge and sewage was coming down through the bottom of the floor where the wall meets the basement floor and coming out from behind the framing of the drywall. Exhibits M7, M8, and M9 are photographs of the liquid coming out on the floor from behind the framing of the drywall.

{¶19} Eight-and-a-half weeks after appellees moved into the home, they had a sewage leak that caused the basement to flood. Exhibits M43, M44, and M45 show the extensive water damage to the floor in the basement prior to the removal of the drywall.

Kerbler knew it was sewage because she could smell it. When Servpro came out to remove the sewage in the basement, they had to remove the drywall in the basement. Once they removed it, Kerbler found multiple old water stains from previous water intrusion that could not be seen until the drywall was removed. Exhibits M4, M5, M12, and M13 show where the drywall was removed and the extensive water staining on the block behind the wall and on the wooden framing, and Exhibits M7, M14, and M15 show large cracks in the wall on the block that was behind the drywall. The cracks are covered by paint. Exhibits M20 and M24 are photographs of the other wall in the basement, and show extensive old water staining, and old paint with new paint over it. Exhibit M26 is a photograph of the water heater sitting in sewage water with sewage water on it. Kerbler testified the water heater did not work properly after it was involved in several floods. Kerbler testified that, on the unfinished portion of the basement, the paint wore away after the floods and there were cracks and water damage (Exhibits M36 and M37).

{¶20} Exhibit M38 is a photograph Kerbler took of the drywall they had to take down after the water intrusion. The date stamped on the back of the drywall is "2/18/20." Kerbler testified this is significant because Van Deest purchased the property in December of 2019. Exhibit M39 shows new PVC piping in front of a black painted wall with a crack that was previously behind the drywall. The pipes are disjointed. Kerbler testified this was not visible upon their inspection because it was behind the drywall.

{¶21} Kerbler stated the basement wall that had the issue is where the plumbing from the house goes out to the sewer system. Kerbler testified that Exhibits M10 and M11 are photographs she took of the cracked and broken pipe (septic line) that goes from the house to the septic tank. Additionally, Kerbler testified that, at the back of the house

where the broken pipe is, there is a portion of new siding that is a different from the other siding. The new siding is a different color and lighter than the rest of the siding. Kerbler also stated there is a block wall along the foundation that is brand new that doesn't match the other block. Kerbler testified to electrical issues that started approximately a year after they moved in. She testified to photographs of wiring she described as faulty (Exhibits M28, M32, M33).

{¶22} Kerbler testified to what it cost them to remediate and repair the home by referencing invoices from companies they paid. The amounts she testified to were as follows: $8,485 for dechlorinization system, $439.39 for hose bibbs, $450 to put a camera down the well, $11,050.57 for a new well, septic services for $4,250, $4,000.87 for water damage restoration, $450 and $375 for mold testing, $4,549.73 and $2,867.16 to Servpro for basement water removal, $2,766.77 for installation of new basement drywall, $960 for electric repairs in March of 2021, new garage floor coating in April of 2021 for $5,094 and $3,622, $371.88 for new drywall in June of 2021, $580 for a sump pump in August of 2021, $2,022 for a new hot water tank because the previous one was damaged by the basement floods, and $115 and $640 for electrical repairs. Kerbler testified they could not afford to pay for all of these repairs, so her father gave her some money to help out with the bills.

{¶23} Kerbler also stated there are additional repairs necessary. Kerbler testified she obtained estimates for these repairs. She stated she is going to incur these expenses, and they are not speculative or remote. They have not yet completed all the repairs because they did not have the funds to do so. The amounts she testified to were as follows: $1,456 and $1,179 for gutter and drain replacement, $29,356 for basement

waterproofing, $8,065 for HVAC repair due to moisture coming into the house, $536.25 to waterproof the chimney, and $642.43 to seal the concrete block.

**{¶24}** Kerbler believes they are "stuck" with the home due to all the defects. She testified that even if they fixed all the problems she "couldn't just sell the house and let someone else live there knowing what we know about it."

**{¶25}** On cross-examination, Kerbler testified she did not "see" Biltwell or Van Deest put the rope on the wellhead, and no one impeded their ability to have the home inspected. Kerbler admitted the inspection recommended she obtain a battery backup for the sump pump, but she did not get one. They did have an issue in February of 2021 when the circuit on the sump pump failed. When asked by the jury to clarify how many times the basement initially flooded in the weeks after she purchased the home prior to the removal of the drywall, Kerbler stated the basement flooded three times, with two to three inches of water covering the basement each time.

**{¶26}** James Kerbler, Samantha's father, saw the nylon rope tied around the wellhead several times to cover up the large hole in the wellhead. Adam Rigby, Samantha's husband, testified he had no direct evidence that Biltwell knew of the issues with the septic and concealed it.

**{¶27}** Matthew Mercer ("Mercer"), appellants' expert, examined the property in September of 2022. Mercer testified the cracks and effervescence are common for homes the age of the home on Goose Lane. Further, that there was no evidence presented to suggest any long-term water intrusion or evidence to suggest the issues were concealed by the previous owner of the home. On cross-examination, Mercer testified he did not examine the block behind the drywall and he was not informed that,

prior to his inspection, the basement wall was repaired by appellees by laying new block and new drywall in 2020. When the jury asked Mercer if his report and conclusions took into consideration that his inspection was done after the basement had been cleaned and repaired, Mercer testified he was not aware of any cleaning and repairing in the basement.

{¶28} At the close of appellees' presentation of evidence, appellants moved for a directed verdict on appellees' claims. The trial court denied the motion.

{¶29} The trial court required the jury to answer multiple interrogatories. There were two sets of interrogatories, one set for Van Deest personally, and one set for Biltwell. In the interrogatories for the breach of contract claim, the jury found: appellees entered into a contract with Biltwell/Van Deest, appellees performed their obligations under the contract with Biltwell/Van Deest, Biltwell/Van Deest failed to perform its obligations under the contract with appellees, Biltwell's/Van Deest's failure to perform its obligations under the contract with appellees proximately caused appellees damages, Biltwell's/Van Deest's failure to perform its obligations under its contract with appellees caused appellees damages in the amount of $52,151, and appellees failed to mitigate their damages in the amount of $12,535.

{¶30} In the interrogatories for the fraud claims, the jury found: Biltwell/Van Deest knowingly made a false material representation to appellees, appellees were justified in relying on Biltwell/Van Deest's false representation, Biltwell/Van Deest's false representation proximately caused appellees damages, Biltwell/Van Deest's false representation proximately caused appellees damages in the amount of $52,151, Biltwell/Van Deest knowingly concealed a material fact from appellees, appellees were justified in relying on Biltwell/Van Deest's concealment of a material fact, Biltwell/Van

Deest's concealment of a material fact proximately caused appellees damages in the amount of $52,151, Biltwell/Van Deest intended to mislead appellees, appellees had an unimpeded opportunity to inspect the home, Biltwell/Van Deest failed to disclose a material fact relating to a structural defect in the house that was not readily observable or discoverable upon a reasonable inspection, the material fact relating to the structural defect in the house that was not readily observable or discoverable upon a reasonable inspection that Biltwell/Van Deest failed to disclose was that a "portion of block wall was rebuilt, covered in fresh paint," and Biltwell/Van Deest knew of the material fact relating to a structural defect in the house identified in the previous interrogatory.

{¶31} The jury signed verdict forms in accordance with their interrogatories, finding in favor of appellees and against appellants in the amount of $52,151 for fraud and in the amount of $52,151 for breach of contract. The trial court sent the jury back to clarify as to whether the jury intended the $52,151 in compensatory damages to be reduced by the $12,535 that the jury determined appellees failed to mitigate. The jury answered "no," they did not intend the $52,151 award to be reduced by $12,535.

{¶32} After the first portion of the bifurcated trial, each party made further arguments regarding punitive damages. The jury found appellees were entitled to punitive damages against Biltwell and Van Deest in the amount of $25,500. The jury also found attorney fees should be awarded against Biltwell and Van Deest.

{¶33} Appellees filed a motion for attorney fees on July 27, 2023. They included detailed billing summaries in their motion. Appellants filed a memorandum contra on August 30, 2023, and appellees filed a reply on September 14, 2023. The trial court held an evidentiary hearing on the motion on December 1, 2023. Attorney Barga testified to

the firm's handling of attorney fees and expenses, and stated the fees were reasonable. Andrew Clark, appellees' expert, testified the attorneys charged a reasonable hourly rate and that the total amount of hours spent was also reasonable. The trial court issued a judgment entry on December 14, 2023, granting appellees the full amount requested in attorney fees, $101,012 ($92,180 through trial plus $8,832 in post-trial attorney fees) and expenses in the amount of $14,566.84 ($8,866.48 through trial plus $5,700 post-trial expert fee).

{¶34} The trial court issued a final judgment entry on January 5, 2024, rendering judgment against Biltwell and Van Deest, jointly and severally, in the total amount of $193,229,48, plus interest accruing at 5%.

{¶35} Appellants appeal the judgment entries of the Licking County Court of Common Pleas, and assign the following as error:

{¶36} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANTS' MOTION FOR A DIRECTED VERDICT.

{¶37} II. THE TRIAL COURT ERRED WHEN IT PERMITTED HEARSAY TESTIMONY.

{¶38} III. THE EVIDENCE WAS INSUFFICIENT TO DEMONSTRATE THAT APPELLANTS' BREACHED A CONTRACT OR COMMITTED FRAUD.

{¶39} IV. THE JURY'S FINDINGS THAT APPELLANTS WERE LIABLE FOR BREACH OF CONTRACT, FRAUD, AND THAT THE FRAUD WAS AGGRAVATED OR EGREGIOUS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶40} V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED PLAINTIFFS-APPELLEES ATTORNEY FEES.

{¶41} VI. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED PLAINTIFFS-APPELLEES COSTS.

{¶42} VII.  APPELLEES CANNOT RECOVER PUNITIVE DAMAGES WITHOUT EVIDENCE THAT THE FRAUD PROXIMATELY CAUSED THEM ACTUAL DAMAGES.

{¶43} VIII. THE TRIAL COURT'S NUMEROUS ERRORS REQUIRE REVERSAL UNDER THE CUMULATIVE ERROR DOCTRINE."

I.

{¶44} In appellants' first assignment of error, they contend the trial court committed error when it denied their motion for a directed verdict on both the breach of contract and fraud claims.

{¶45} A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo.  Civil Rule 50 states that when reviewing a motion for directed verdict, the court must construe the evidence most strongly in favor of the party against whom the motion is directed.  If the trial court finds on any determinative issue reasonable minds could come to but one conclusion on the evidence submitted, then the court shall sustain the motion and the directed verdict as to that issue. *Large v. Lilley*, 2018-Ohio-1017 (5th Dist.).  A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in plaintiff's favor.  *Id.*  A case must proceed to the jury "if there exists any evidence of substantive probative value that favors the position of the nonmoving party." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Surety Co.*, 95 Ohio St.3d 512 (2002).

*Breach of Contract*

**{¶46}** Appellants contend the trial court should have directed a verdict in their favor on the breach of contract claim because: there was no contract between the parties because the RPDF was not a separate contract and was not included in the purchase agreement; there was no contract between Van Deest and appellees because he signed both the RPDF and purchase agreement on behalf of Biltwell; and appellants did not breach the contract because there was no evidence of damages, no evidence the block wall concealed any damages, and no evidence appellees had exclusive control of the property from purchase to sale.

**{¶47}** For a breach of contract, a plaintiff must show by a preponderance of the evidence that: (1) a contract existed; (2) one party fulfilled their obligations; (3) the other party failed to fulfill their obligations; and (4) damages resulted from the failure. *Austin v. Mid-Ohio Pipeline Services, LLC*, 2023-Ohio-1958 (5th Dist.).

**{¶48}** While appellants initially argue there is no contract at all in this case, in their answer, appellants stated, "defendants admit that Defendant Biltwell Contracting, LLC entered into a contract to sell the premises commonly known as 5100 Goose Lane, Alexandria, Ohio, with the plaintiffs on or about April 9, 2020." Additionally, while courts, including this court, have held that the RPDF itself is a separate contract, we need not make that specific determination in this case, because the RPDF was specifically incorporated into the purchase agreement (Section 1). See *Dodson v. Moore*, 2008-Ohio-5333 (5th Dist.) (RPDF is separate contract); *Hubbard Family Trust v. TNT Land Holdings, LLC*, 2014-Ohio-772 (4th Dist.); *Thackston v. Zembower*, 2023-Ohio-1690 (7th Dist.) (RPDF incorporated into purchase agreement).

**{¶49}** As to Van Deest's personal liability on the contract, "if a corporate officer executes an agreement in a way that indicates personal liability, then that officer is personally liable regardless of his intention. Whether an officer or agent is personally liable under the contract depends upon the form of the promise and the form of the signature." *Hubbard Family Trust v. TNT Land Holdings, LLC*, 2014-Ohio-772 (4th Dist.); *Herhold v. Smith Land Co.*, 2019-Ohio-2418 (9th Dist.) The signature represents a clear intention that the signator is acting as an agent or officer if: (1) the name of the principal is disclosed; (2) the signature is preceded by words of agency such as "by" or "per" or "on behalf of"; and (3) the signature is followed by a title which represents the capacity in which the signator is executing the document (i.e. vice-president or president.") *Id.* "Where an agent signs a negotiable instrument by affixing thereto his own signature, without adding the name of the principal for whom he acts, the agent so signing is himself personally bound on such instrument." *West Shell Commercial, Inc. v. NWS, LLC*, 2007-Ohio-460 (12th Dist.). A corporate officer is responsible for clearly identifying the corporation for which the officer is signing, or the officer is exposed to individual liability. *Herhold v. Smith Land Co.*, 2019-Ohio-2418 (9th Dist.).

**{¶50}** In this case, Van Deest did not comply with these guidelines in completing the purchase agreement and/or the RPDF. On the RPDF, under the "owner's name" line, Van Deest wrote his own name. Further, every set of initials throughout the RPDF is executed by Van Deest individually. On the front page and each of the subsequent pages, where the boxes state "owners' initials," Van Deest wrote "TV" on each box on every page. On the "Certification of Owner" section, Van Deest wrote his own name, with what appears to be the word "member" after his name. However, the name of the principal is

not disclosed on the RPDF, as "Biltwell" was nowhere on the RPDF. Van Deest's signature is not preceded by words of agency. Similarly, in the purchase agreement, the name of the principal is not disclosed, as "Biltwell" appears nowhere in the purchase agreement, and Van Deest's signature is not preceded by words of agency. This is substantive and probative evidence that favors the position of the nonmoving party. Accordingly, we find the trial court did not commit error in denying appellants' motion for directed verdict in this regard.

{¶51} As to appellants' argument with regard to lack of damages, pursuant to our analysis in Assignment of Error II, we find Kerbler properly testified to damages. Though appellants contend there was no evidence the block wall that was concealed caused any damages, the testimony and photographs provided by appellees dispute this assertion. The testimony and photographs are "any evidence of substantive probative value" that favors appellees' position. Similarly, there is evidence of substantial probative value that appellants had control of the property during the time at issue due to the auditor's records provided.

{¶52} We find the trial court did not commit error in failing to direct a verdict on appellants' breach of contract claims. Appellees have presented evidence from which reasonable minds could find in their favor.

*Fraud*

{¶53} Appellants argue the trial court should have directed a verdict on the fraud claims because there was no evidence appellees knew of any issues with the residence and appellees had an inspection of the property. Further, as to Van Deest, he contends

there could not be a finding against him personally because appellees did not show any evidence of "piercing the corporate veil" to make Van Deest personally liable.

**{¶54}** In order to prove fraud, a plaintiff must show proof of the following elements: (1) a representation or, where there is a duty to disclose, omission of a fact, or concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Riehm v. Reindl*, 2023-Ohio-4611 (5th Dist.).

**{¶55}** Ohio courts have applied the common law doctrine of fraud, either by misrepresentation, concealment, or nondisclosure, to determine the liability of the seller who fails to disclose information required by the RPDF. *Hull v. Dietrich*, 1997 WL 797732 (2nd Dist. 1997). The failure to disclose facts where there is a duty to disclose has been held to be fraud. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167 (1984); *Reardon v. Hale*, 2007-Ohio-4351 (12th Dist.). The RPDF is required to be provided to prospective purchasers by statute. R.C. 5302.30 creates a legal duty on the part of the seller to disclose any material defects actually known to them presently affecting the property or any major repairs that had been done within the 5 years preceding the date on which the form was completed. *Dodson v. Moore*, 2008-Ohio-5333 (5th Dist.); *Hull v. Dietrich*, 1997 WL 797732 (2nd Dist. 1987); *Robey v. Colvin*, 2010-Ohio-4543; *Thackston v. Zembower*, 2023-Ohio-1690 (7th Dist.). Each disclosure of an item of information that is required to be made on the RPDF shall be made in good faith by the seller. R.C. 5302.30(E)(1);

*Nieberding v. Barrante*, 2021-Ohio-2593 (8th Dist.). The rationale of R.C. 5302.30 and the requirements it imposes is that prospective purchasers, having being put on notice of particular circumstances or conditions associated with a latent defect, will either decline to make an offer to purchase the property or, before doing so, will make further inquiries or inspections to determine the existence and extent of the defect. *McCoy v. Good*, 2007-Ohio-327 (2nd Dist.).

{¶56} Appellees contend actual knowledge is required for fraud and a "should have known" standard is insufficient for a finding of fraud. However, the knowledge standard with regard to fraud requires plaintiff show only that defendants acted in reckless disregard for the truth, rather than with actual knowledge of its falsity. *Reardon v. Hale*, 2007-Ohio-4351 (12th Dist.); *Thackston v. Zembower*, 2023-Ohio-1690 (7th Dist.) A plaintiff must only prove that a defendant acted with utter disregard and recklessness as to whether a fact is true or false, and such knowledge may be inferred. *Roberts v. McCoy*, 2017-Ohio-1329 (12th Dist.); *Diemert v. Binstock*, 2019-Ohio-3368 (8th Dist.) (seller liable for resulting injury from failing to disclose material fact on RPDF when they "knew or should have known" about the problem); *Kess v. Khan*, 2023-Ohio-2773 (8th Dist.) (fraudulent misrepresentation claim can be based on failure to disclose on RPDF). Accordingly, the trial court did not commit error in denying the motion for directed verdict as to knowledge.

{¶57} Unless appellants admitted they knew about the issues, appellees had to rely on circumstantial evidence to demonstrate knowledge. Courts, including this Court, have held that an inference of knowledge of concealment exists when there is evidence of painting walls and replacing flooring by the seller prior to sale. *Meadows v. Otto*, 2007-

Ohio-4031 (5th Dist.) (inference of concealment existed when homeowner painted basement walls 3-5 times prior to sale); *Nichols v. Petroff*, 2005-Ohio-481 (5th Dist.) (inference of concealment when basement walls were freshly painted and issue not discovered in home inspection); *Brown v. Burnett*, 2020-Ohio-297 (2nd Dist.) (inference of actual knowledge from replacing flooring). Appellees have presented evidence from which reasonable minds could find in their favor through testimony and photographs.

**{¶58}** Appellants argue the doctrine of caveat emptor bars appellees' fraud claims. The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where: (1) the condition complained of is open to observation or discoverable upon reasonable inspection; (2) the purchaser had the unimpeded opportunity to examine the premises; and (3) there is no fraud on the part of the vendor. *Hubbard Family Trust v. TNT Land Holdings*, LLC, 2014-Ohio-772 (4th Dist.). However, caveat emptor only applies to patent defects, i.e. those which are readily discoverable to prospective purchasers upon inspection. *Id.* The purchaser does not assume the risk of latent defects, those which are not readily discoverable. *Decaesteciker v. Belluardo*, 2008-Ohio-2077 (2nd Dist). Here, the jury found latent defects. This determination was supported by "any" evidence that favors the position of appellees in the form of photographs and testimony by Kerbler and Blubaugh.

**{¶59}** As to appellants' argument that appellees failed to provide any evidence of piercing the corporate veil with regards to Van Deest, appellants did not make any argument with regards to piercing the corporate veil at trial. "It is well-established that a party cannot raise any new issues or legal theories for the first time on appeal." *Large v. Lilley*, 2018-Ohio-1017 (5th Dist.). The failure to raise the issue before the trial court

operates as a waiver of the right to assert such for the first time on appeal. *Id.* Further, as detailed above, the theory appellees put forth at trial with regard to fraud was that Van Deest owed a duty to disclose due to his signature and initials on the RPDF and the real estate purchase contract.

**{¶60}** We additionally note that appellants failed to renew their motion for directed verdict at the close of all evidence after the trial court denied the motion at the close of appellees' case-in-chief. *Chem. Bank of New York v. Newman*, 52 Ohio St.3d 204 (1990) (motion for directed verdict which is denied at close of plaintiff's evidence must be renewed at close of all evidence to preserve error for appeal).

**{¶61}** We find the trial court's decision to deny a directed verdict is supported by the record. Appellants' first assignment of error is overruled.

II.

**{¶62}** In their second assignment of error, appellants contend the trial court erred in permitting Kerbler to read from invoices and estimates to establish damages because the invoices contained hearsay.

**{¶63}** A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. *Huth v. Kus*, 2018-Ohio-1931 (5th Dist.). "Hearsay" is a statement, other than one made by declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. *State v. Steffen*, 31 Ohio St.3d 111, 199 (1987). Ordinarily, we review a trial court's hearsay ruling for an abuse of discretion. However, whether evidence is admissible because it falls within an

exception to the hearsay rule is a question of law; thus, our review is de novo. *MCM Home Builders, LLC v. Sheehan*, 2019-Ohio-3899 (5th Dist.).

**{¶64}** There are two sets of invoices at issue: (1) invoices Kerbler testified to that are for repairs previously done to the home and (2) invoices Kerbler testified to that are for repairs that still need done to the home.

**{¶65}** Appellants did not object to the testimony regarding the first set of invoices. Accordingly, appellants waived any such error on appeal. *Nicholson v. Davis Auto Performance*, 2024-Ohio-205 (5th Dist.). We find no plain error in the trial court's admission of Kerbler's testimony. The plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Kell v. Russo*, 2012-Ohio-1286 (5th Dist.), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997). Even if we were to discover plain error, we have "discretion to disregard the error and should correct it only to prevent a manifest miscarriage of justice." *Id.*

**{¶66}** The invoices themselves were not introduced into evidence, and the jury did not view the actual invoices. Rather, Kerbler looked at the invoices during her testimony, and she testified to how much she spent for each repair to the home, and what each repair was for. Kerbler testified to receiving the invoices and testified that she incurred the charges. Counsel for appellants was able to cross-examine Kerbler about these payments, and did so as to specific amounts. Accordingly, we find no plain error in the trial court's admission of her testimony. *League v. Collins*, 2013-Ohio-3857 (12th

Dist.) (invoices admissible as long as plaintiff testified the received the invoice and she incurred the charges); *MCM Home Builders, LLC v. Sheehan*, 2019-Ohio-3899 (5th Dist.) (trial court did not commit error in allowing plaintiff to testify as to invoices); *Sidebottom v. Dennison*, 2004-Ohio-5399 (5th Dist.) (no error in using copies of purchase orders and invoices from stores to demonstrate damages).

{¶67} Appellants did object at trial to Kerbler's testimony with regard to the second set of invoices, which were for repairs that Kerbler testified still need done to the house. However, we still find no error in the trial court's admission of Kerbler's testimony. As detailed above, the invoices themselves were not introduced into evidence, and the jury did not view the actual invoices. While appellants cite to the *Labounty* case to support their argument, the holding of the case actually supports the trial court's admission of the evidence. *Labounty v. Big 3 Automotive*, 2019-Ohio-1919 (6th Dist.) In *Labounty*, the Sixth District held that invoices cannot be introduced without the plaintiff's testimony as to the amount of money he paid, and the plaintiff could not rely exclusively on the invoices to establish the amount plaintiff paid for repairs. *Id.* However, the court stated that, in a case where plaintiff's testimony is used to support the amount paid in the invoices, there is no hearsay issue. *Id.* That is what occurred here. Kerbler specifically testified to the amount listed on each invoice, explained that she paid the invoices, and explained what each of the repairs was for.

{¶68} Additionally, even if Kerbler's testimony about the second set of invoices was inadmissible hearsay, appellants do not demonstrate that the admission of this testimony affected appellants' substantial rights. Civil Rule 61. The jury did not simply accept all of Kerbler's testimony and award her damages on that amount. She asked for

$53,702.27 for repairs she had already paid for and $41,234.68 for repairs that had yet to be completed, for a total of $94,936.95. The jury awarded appellees $52,151 in compensatory damages, only approximately 55% of what Kerbler testified about. Appellants' second assignment of error is overruled.

### III. & IV.

**{¶69}** In appellants' third assignment of error, appellants argue the evidence was insufficient to demonstrate appellants breached a contract or committed fraud. In their fourth assignment of error, appellants contend the jury's verdict on both the breach of contract claim and fraud claim were against the manifest weight of the evidence.

**{¶70}** In *Eastley v. Volkman*, 2012-Ohio-2179, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme Court held the standard of review for manifest weight in criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380 (1997) is also applicable to civil cases.

**{¶71}** A verdict can only be set aside on weight of the evidence in a case where the trier of fact clearly lost its way and created a manifest miscarriage of justice; every reasonable presumption is to be made in favor of the fact-finder who occupies the best position to evaluate the demeanor, gestures, and voice inflections of the witness in order to adjudge credibility. *Id.* A factfinder may believe all, part, or none of the testimony of any witness who appears before it. *MCM Home Builders, LLC v. Sheehan*, 2019-Ohio-3899 (5th Dist.).

**{¶72}** As an appellate court, we are not fact-finders; we neither weigh the evidence nor judge the credibility of the witnesses. *Id.* Our role is to determine whether

there is relevant, competent, and credible evidence upon which the fact-finder could base its judgment. *Id.* Generally, a civil judgment which is supported by competent and credible evidence may not be reversed as being against the manifest weight of the evidence. *Id.*

**{¶73}** Our standard of reviewing the sufficiency of the evidence in a civil case is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent and credible evidence. *Moran v. Gaskella*, 2012-Ohio-1158 (5th Dist.). Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact-finder could base his or her judgment. *Cross Truck Equipment Co v. Joseph A. Jeffries, Co.*, 1982 WL 2911 (5th Dist.). "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 2012-Ohio-2179.

**{¶74}** Appellants' manifest weight and sufficiency of the evidence arguments as to both the breach of contract and fraud claims mirror the arguments they made in their assignment of error regarding the denial of the directed verdict (no competent and credible evidence as to Van Deest's personal liability on the contract; no competent and credible evidence of appellants' knowledge; no evidence appellants ever went to the property; no evidence of damages due to inadmissible hearsay; no evidence the concealed wall caused any damages).

**{¶75}** We find there was competent and credible evidence from which the jury could conclude Van Deest signed the RPDF and/or purchase agreement in his individual

capacity.  Van Deest listed his own name under the "owner's name" line on the RPDF.  Every set of initials throughout the RPDF is executed by Van Deest individually.  Though Van Deest wrote "member" on the purchase agreement, the name of the principal ("Biltwell") is not disclosed in either the purchase agreement or RPDF.  Van Deest's signature is not preceded by words of agency in either the RPDF or purchase agreement.  Mullins testified that, on the multiple listing service, Van Deest listed himself as the "owner/agent."  Van Deest did not take the stand to clarify his signature on the documents or his representation on the multiple listing service.  As to the fraud claim, we find there is competent and credible evidence that Van Deest signed the RPDF in his individual capacity.

{¶76}  Appellants contend the jury's verdict is against the manifest weight and sufficiency of the evidence because appellees produced no evidence that appellants ever went into the home and there was no evidence the issues were there prior to appellees moving into the home.  We disagree with appellants and find there is competent and credible evidence to support the jury's determination.  Appellants' own expert stated in his report that the home was previously "owned and renovated" by appellants.  Further, appellees presented evidence that Biltwell and Van Deest were the owners of the property in the form of public records from the auditor, and the signatures on the RPDF and purchase agreement.

{¶77}  The drywall on the wall the jury found was concealing the water problem had the date of February 18, 2020, a point in time during which Van Deest and Biltwell owned the property.  The testimony by Kerbler and Blubaugh establish the basement walls were freshly painted and newly drywalled in April of 2020.  The photographs show

extensive water damage behind the drywalled wall, and also show cracks covered by dark paint. Additionally, both Samantha Kerbler and her father James testified they saw a nylon rope tied multiple times around a large hole in the wellhead soon after moving into the home. The photographs introduced into evidence show the nylon rope around the large hole. The jury made a permissive inference from the testimony and evidence admitted at trial. Van Deest chose not to appear or testify at trial to dispute this evidence or rebut the permissible inference.

**{¶78}** Appellants also contend the jury's verdict was against the manifest weight and sufficiency of the evidence because there is no evidence appellants had knowledge of the defects. Appellants essentially argue that since there is no direct testimony, and none of appellees' witnesses could provide any direct evidence that appellants had knowledge of the defects, the jury's finding is against the manifest weight and sufficiency of the evidence. However, as the trier of fact, the jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. *State v. DeHass*, 10 Ohio St.2d 230 (1967).

**{¶79}** Direct evidence of appellants' knowledge is not required. This is because circumstantial and direct evidence inherently possess the same probative value. *State v. Jenks*, 61 Ohio St.3d 259 (1991). Circumstantial evidence is that which can be "inferred from reasonably and justifiably connected facts." *State v. Fairbanks*, 32 Ohio St.2d 34 (1972). This is particularly true in the context of knowledge for fraud. Fraud need not be proved by direct evidence but may be inferred from circumstantial evidence. *Burnett v. Sebel*, 106 Ohio App. 86 (1st Dist. 1958). One does not have to prove knowledge with direct evidence because that would, in effect, insulate the defendant from liability unless

he or she were to admit knowledge. *Id.* Accordingly, a plaintiff may establish knowledge through circumstantial evidence. The intent to mislead another into relying on a misrepresentation or concealment of a material fact frequently must be inferred from the totality of the circumstances since a person's intent is rarely provable by direct evidence. *Id.*; *Thackston v. Zembower*, 2023-Ohio-1690 (7th Dist.).

{¶80} There are rational, competing inferences from the evidence. Appellants' failure to disclose the condition in the RPDF raises a reasonable inference appellants did not want to warn appellees of the problems prior to closing. Appellants did not make a single disclosure regarding any material defect regarding the home. Appellees experienced multiple problems shortly after moving in, including standing water in the basement, water leaks, a well collapse, and septic issues, suggesting a failure to disclose numerous problems with the home.

{¶81} Due to permissible inferences from these facts, the jury is in the best position to determine whether appellants had the requisite intent. *Hull v. Dietrich*, 1997 WL 797732 (2nd Dist. 1987). In making the inference about knowledge, the jury relied upon appellants' control and ownership of the property, along with the testimony of the witnesses and the extensive photographs provided. *Hanson v. Rieser*, 1999 WL 1009710 (10th Dist.). Van Deest did not appear at trial, or testify as to his lack of knowledge of the issues with the home. Although the evidence in this case may have been circumstantial, we find sufficient complete and credible circumstantial evidence, if believed, was presented to establish appellants acted with utter disregard and recklessness as to whether a fact is true or false such that knowledge may be inferred.

**{¶82}** Courts, including this Court, have held that an inference of knowledge of concealment exists when there is evidence of painting walls and replacing flooring by the seller prior to sale. *Meadows v. Otto*, 2007-Ohio-4031 (5th Dist.) (inference of concealment existed when homeowner painted basement walls 3-5 times prior to sale); *Nichols v. Petroff*, 2005-Ohio-481 (5th Dist.) (inference of concealment when basement walls were freshly painted and issue not discovered in home inspection); *Brown v. Burnett*, 2020-Ohio-297 (2nd Dist.) (inference of actual knowledge from replacing flooring). Further, courts have found a jury's verdict is not against the manifest weight or sufficiency of the evidence when there is evidence to show the sellers physically hid defects in the property with carpet, wallpaper, paint, or drywall, or by covering cracks. *Southworth v. Weigand*, 2002-Ohio-4584 (8th Dist.) (stains concealed by carpet, wallpaper, and paint); *Ferguson v. Cable*, 2009-Ohio-4285 (5th Dist.) (undisclosed repair work not capable of being discovered during reasonable inspection); *Felty v. Kwitkowski*, 1995 WL 643780 (8th Dist.) (knowledge inferred from wall placed in front of foundation in basement); *Harris v. Burger*, 1995 WL 502541 (8th Dist.) (knowledge inferred from extensive nature of cracks that covered cracks to conceal them); *Shannon v. Fischer*, 2020-Ohio-5567 (12th Dist.) (inspection of areas covered by drywall is not something a purchaser could find in a "reasonable inspection"). Here, there was evidence to show appellants physically hid defects in the property by paint, drywall, and a nylon rope. When giving appellees the benefit of all reasonable inferences from the evidence, we find there was sufficient, probative, circumstantial evidence presented to support their claims.

**{¶83}** Appellants cite *McDonald v. JP Development Group, LLC,* in support of their argument that when a home is unoccupied, the fact that a seller painted the walls and the

floor is insufficient to infer knowledge of a water problem. 2013-Ohio-3913 (8th Dist.). However, *McDonald* is distinguishable from the instant case in several ways. First, the purchase agreement in that case contained an "as is" clause that does not exist in this purchase agreement. Second, the defendant in that case affirmatively stated he had no knowledge of any water problem in the basement. Van Deest did not appear or testify at the trial, and made no affirmative statement that he had no knowledge of any water problem at the Goose Lane home. Finally, in this case, it was not only the painting of the walls and floor, but the jury found the actual concealment was painting *and* drywalling over the problem.

{¶84} As to appellants' argument regarding damages, as we determined in the previous assignment of error, Kerbler's testimony on damages was not inadmissible hearsay. Further, we find there is competent and credible evidence, in the form of Kerbler's testimony and the photographs, that the water intrusion covered by the drywall caused damage. The photographs show liquid coming out from underneath the drywalled wall. Further, Hughes testified the water intrusion needed professional remediation and mitigation. Appellees offered evidence concerning the nature and extent of the damage, including the amount spent on repairs. Kerbler testified to the damage to the home and introduced photographs of the damage. The evidence supports a reasonable inference that the repairs performed were necessary and the cost of the repairs was reasonable. *McCoy v. Good*, 2007-Ohio-327 (2nd Dist.). When a claim involves a residential real property and the damages to it, jurors may be presumed to understand what defects diminish the owner's enjoyment and use of it. *Reynolds v. Bauer*, 2006-Ohio-2912 (2nd Dist.). Further, the jury clearly used its discretion to deny appellees some of their

requested damages. Appellees requested $94,936.95 in compensatory damages; the jury found the appropriate amount was $52,151.

**{¶85}** One additional argument appellants make in their manifest weight and sufficiency argument that was not made in their motion for directed verdict was that there was not competent and credible evidence of "actual malice" sufficient to support an award of punitive damages. While actual malice is necessary for an award of punitive damages, there are two ways in which to find actual malice: (1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty*, 32 Ohio St.3d 334 (1987). The latter category of actual malice (conscious disregard) includes "extremely reckless behavior revealing a conscious disregard for a great and obvious harm." *Spires v. Oxford Mining Co., LLC*, 2018-Ohio-2769 (7th Dist.). Malice may be inferred from "reckless, wanton, willful, or gross behavior." *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36 (1989).

**{¶86}** Whether actual malice exists is a question for the trier of fact. *Spires v. Oxford Mining Co., LLC*, 2018-Ohio-2769 (7th Dist.). "The same standard of review is employed to assess the weight of evidence whether the finding is for compensatory damages or the elements necessary to justify an award of punitive damages." *Id.* Factual determinations will not be overturned as long as they are supported by some competent and credible evidence. *Id.*

**{¶87}** In this case, we find the jury's inference of malice from appellants' behavior not against the manifest weight or sufficiency of the evidence based on the evidence, including the testimony and photographs, provided by appellees. The trial court properly

instructed the jury on the standard for the imposition of punitive damages. A jury is presumed to follow the instructions of the trial court. *MCM Home Builders, LLC v. Sheehan*, 2019-Ohio-3899 (5th Dist.); *Pang v. Minch*, 53 Ohio St.3d 186 (1990). This Court will not invade the province of a properly instructed jury which reached a reasonable decision based upon the evidence presented to it. *Windsor Med. Ctr., Inc. v. Time Warner Cable, Inc.*, 2021-Ohio-158 (5th Dist.). We also note that the award of punitive damages award was not excessive or grossly disproportionate to the award of compensatory damages. *Sky v. Van Der Westhuizen*, 2019-Ohio-1960 (5th Dist.). Appellees asked for over $100,000 in punitive damages; the jury awarded $25,500.

{¶88} Upon our review of the record, we find there is competent and credible evidence to support the jury's verdict. The jury did not clearly lose its way; nor did the jury's verdict create a manifest miscarriage of justice. Appellants' third and fourth assignments of error are overruled.

V.

{¶89} In their fifth assignment of error, appellants contend the trial court committed error in awarding appellees attorneys' fees.

{¶90} A trial court has discretion to determine the appropriate amount of attorney's fees to award in each case; therefore, a fee award is not generally overturned on appeal absent an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143 (1991). The Ohio Supreme Court has held the starting point for the determination of a reasonable amount of fees is the number of hours spent by the attorney multiplied by the reasonable hourly rate. *Id.* "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461

U.S. 424 (1983). The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rate. *Id.* Once a trial court calculates the "lodestar figure," it can modify the calculation by applying factors listed in Rule 1.5 of the Ohio Rules of Professional Conduct. *Sky v. Van Der Westhuizen*, 2019-Ohio-1960 (5th Dist.).

{¶91} Generally, a prevailing party in a civil action may not recover attorney fees as part of the costs of litigation. *Wilborn v. Bank One Corp.*, 2009-Ohio-306. However, an exception to that rule exists when punitive damages are awarded in tort cases involving fraud, insult, or malice. *Columbus Fin., Inc. v. Howard*, 42 Ohio St.2d 178 (1975). If punitive damages are awarded, reasonable attorney fees may be awarded as an element of compensatory damages. *Galmish v. Cicchini*, 90 Ohio St.3d 22 (2000).

{¶92} Appellants contend the trial court committed error in reaching the attorney fee amount for several reasons: improper block billing, clerical work that cannot be billed, excessive conferencing between the attorneys, spending time on the State Farm motion for summary judgment, and improper post-trial attorney fees.

{¶93} As to appellants' clerical work argument, they do not point to specific entries that are impermissibly clerical. Attorney Barga testified to Exhibit B, a list that contains $10,100 in hours that the firm deemed non-billable. These entries include tasks such as copying, scanning, phone calls, and uploading. Thus, we find the trial court did not abuse its discretion because counsel already eliminated non-billable clerical work from its fee request. We similarly find the trial court did not commit error with regard to excessive conferencing. Upon our review, we do not find any specific instances of excessive conferencing between the attorneys. Additionally, Attorney Barga testified that his firm

determined some hours to be non-billable when attorneys were conferencing with each other. As to appellants' argument regarding counsel for appellees responding to the State Farm motion to summary judgment, we find it was not unreasonable for the trial court to award fees in this regard. Appellees interests were not represented by either appellants or State Farm in that briefing, and the time was spent prior to the dismissal of the cross-claim. We find no abuse of discretion in the trial court's finding this amount was reasonably necessary to litigate the case. *Calypso Asset Mgmt, LLC v. 180 Industrial, LLC*, 2021-Ohio-1171 (10th Dist.).

**{¶94}** Appellants allege counsel for appellees improperly engaged in block billing. We agree, in part. The Ohio Supreme Court established a rigid rule against block billing, defined as the practice of combining a number of different legal tasks into a single billable entry. *State ex rel. Harris v. Rubino*, 2018-Ohio-5109. The Supreme Court rationalized that combining multiple tasks into single entries complicates the process of determining whether the time spent was reasonable. *Id; Calypso Asset Mgmt, LLC v. 180 Industrial, LLC*, 2021-Ohio-1171 (10th Dist.).

**{¶95}** At the evidentiary hearing, Attorney Barga explained that there was not impermissible block billing in the firm's time entries; rather, the person billing was providing descriptive details for each entry. While we agree that certain entries simply contain a more detailed description of how an attorney or paralegal completed a certain task or consisted of one task with multiple subjects or recipients, there are some entries that impermissibly combine a number of different legal tasks into a single billable entry.

**{¶96}** Appellants contend that the attorney fees should be denied entirely due to block billing and/or a general across-the-board reduction would be appropriate. While we

agree there are some impermissible block billed entries, we decline to deny all fees, or require the trial court to impose a percentage reduction on all of the fees. Rather, we have reviewed the entries, and find that the trial court approved $9,555.50 in block-billed time that should have been excluded under the Ohio Supreme Court's decision in *Rubino*.

**{¶97}** Finally, appellants argue the trial court improperly awarded appellees the full amount they requested for post-trial attorney fees. We agree. Attorney Barga testified ("we actually – uh – included an anticipation based on the idea that this would be a half-day. Obviously, we will adjust that to match the realistic time in here") at the evidentiary hearing that they would reduce the amount of the bill after the hearing because they billed for a half-day hearing, and the hearing lasted less than two hours. However, prior to counsel submitting the reduced fee amount, the trial court granted the full fee amount of $8,832, which is based upon a longer hearing time that what actually occurred.

**{¶98}** Appellants' fifth assignment of error is overruled in part and sustained in part. The attorney fee award should be reduced by $9,555.50 due to block billing. Further, upon remand, the trial court should reduce the $8,832 in post-hearing attorney fees to reflect the time actually spent at the evidentiary hearing.

VI.

**{¶99}** In their sixth assignment of error, appellants argue the trial court committed error in awarding appellees costs. A court's assessment of costs, expenses, and attorney fees are reviewed under an abuse of discretion standard. *State ex rel. Fant v. Regional Transit Auth.*, 48 Ohio St.3d 39 (1990).

**{¶100}** In their argument, appellants contend that while costs are recoverable, expenses are not. However, this Court, and other courts, have held that some expenses,

such as expert witness fees, are properly recoverable in connection with an attorney fee award in some instances. *Fortner v. Ford Motor Co.*, 1998 WL 172862 (5th Dist.) (trial court did not abuse its discretion in concluding litigation expenses were a reasonable portion of attorneys fees). These instances include an award to a prevailing party where punitive damages and/or attorney's fees were properly awarded. *Parrish v. Machlan*, 131 Ohio App.3d 291 (1st Dist. 1997); *Spero v. Project Lighting, L.L.C.*, 2016-Ohio-1363 (11th Dist.); *Premier Therapy, LLC v. Childs*, 2016-Ohio-7934 (7th Dist.), appeal not allowed *Premier Therapy, LLC v. Childs*, 2017-Ohio-6964 (litigation expenses in the form of expert witness fees can be considered by the trial court when calculating attorney fees where there is a prior finding that punitive damages and attorney's fees were warranted).

{¶101} While appellants are correct that amounts to mail items, expert fees, hotel accommodations, and court reporter fees are not statutorily recoverable as "costs," there is a difference between "costs" pursuant to statute and "expenses." In this case, there was a valid award of attorney's fees by the jury, and an award of punitive damages by the jury. Accordingly, we find the trial court did not abuse its discretion in awarding, as expenses, the amounts for postage, court reporter fees, hotel amounts since the hotel cost less than mileage, and for expert fees (subject to the limitation as detailed below).

{¶102} We agree with appellants' argument in three respects. First, we find the trial court committed error in awarding appellees witness fees for witnesses that did not appear at the trial in the amount of $42.00 (Caughenbaugh witness fee, Halla witness fee, Hudson witness fee). Second, we find the trial court committed error in not reducing the attorney fee expert's fee because the expert testified he based his requested amount of $5,700 on a half-day hearing, but the hearing only lasted less than two hours. Third,

the Ohio Supreme Court has specifically ruled that fees for discovery depositions conducted outside the presence of a judge may not be recovered. *Vossman v. Airnet System, Inc.*, 2020-Ohio-872. Accordingly, the amounts listed in appellees' Exhibit A for depositions are not recoverable (total amount of $2,871.95).

{¶103} Appellants' sixth assignment of error is overruled in part and sustained in part. Upon remand, the trial court should reduce the cost and expense award by $2,913.95, and should determine how much to reduce the expert fee to accurately reflect the shorter amount of time spent at the hearing.

VII.

{¶104} In their seventh assignment of error, appellants contend appellees cannot recover punitive damages without evidence of compensatory damages. As detailed above, we find the jury appropriately awarded appellees compensatory damages on the fraud claim.

{¶105} The trial court properly instructed the jury on the standard for the imposition of punitive damages. A jury is presumed to follow the instructions of the trial court. *MCM Home Builders, LLC v. Sheehan*, 2019-Ohio-3899 (5th Dist.). In this case, appellees asked for approximately $150,000 in punitive damages. The jury awarded appellees $25,500. This Court will not invade the province of a properly instructed jury which reached a reasonable decision based upon the evidence presented to it. *Navistar, Inc. v. Dutchmaid Logistics, Inc.*, 2021-Ohio-1425 (5th Dist.). Appellants' seventh assignment of error is overruled.

VIII.

{¶106} In their last assignment of error, appellants contend the cumulative effect of the trial court's errors denied him a fair trial.

{¶107} Pursuant to the cumulative error doctrine, which is usually presented in criminal cases, a conviction will be reversed where the cumulative effect of errors in a trial deprives the defendant of the constitutional rights to a fair trial even though each individual error by itself does not constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49 (1995). Ohio courts have found "the extension of the cumulative error doctrine to civil cases is warranted where the court is confronted with several errors, which either are harmless individually or have marginally prejudicial effects, but combine to require a new trial." *Edge v. Fairview Hospital*, 2011-Ohio-2148 (8th Dist.).

{¶108} In the instant case, we do not find multiple instances of harmless error triggering the cumulative-error doctrine. Appellants' eighth assignment of error is overruled.

{¶109} Based on the foregoing, appellants' first, second, third, fourth, seventh, and eighth assignments of error are overruled.  Appellants' fifth and sixth assignments of error are overruled in part and sustained in part.  The cost and expense award should be reduced by $2,913.95, and the attorney fee award should be reduced by $9,555.50. Additionally, upon remand, the trial court should reduce the expert fee and attorney fee to accurately reflect the shorter amount of time spent at the hearing.

By Gwin, J., and

Delaney, P.J., concur,

King, J., dissents

*King, J. dissents,*

{¶ 110} I respectfully dissent from the majority opinion and would sustain assignments of error three and four. I find plaintiffs-buyers did not carry their burden to prove their fraud claim. In addition, I would find the amount of damages awarded by the jury for breach of contract should be reduced.

{¶ 111} Here, the buyers bought a house under a purchase agreement that included disclosures regarding what the current owner knew about the property. As buyers, they had every contractual right to rely on the truth of those disclosures. But their expectancy interest was not—nor could it be—that the house was free from all defects whatsoever.

{¶ 112} R.C. 5302.30(D) requires a seller to disclose "material matters related to the physical condition of the property to be transferred . . . that are within the actual knowledge of the transferor." This is not a statutory obligation on the seller to undertake a search for any possible defects, nor does it require the seller to supply a warranty that the property is free of defects. *See Roberts v. McCoy*, 2017-Ohio-1329, ¶ 17 (12th Dist.). In fact, the form disclaims a warranty is being created and suggests the buyer secure the services of a home inspector.

{¶ 113} Thus, it is not enough that a buyer establish that the statutorily mandated disclosure form did not disclose a now discovered defect. Nor is it enough for a disappointed buyer to show the seller should have known about a latent defect—actual knowledge of the defect is required. Any plaintiff-buyer bears the burden of proof to show the seller had actual knowledge and failed to disclose it.

{¶ 114} Although the buyers here were unable to come forward with any direct evidence that the sellers knowingly made false material statements in the RPDF, they point to circumstantial evidence to carry their burden. In particular, they argue the sellers concealed defects in the well with a rope and concealed defects in a wall by concealing it. They also claim the sellers concealed the poor condition of the septic system, a failing sump pump, electrical defects, and water infiltration or leaks.

{¶ 115} A myriad of latent defects showing up periodically over the course of months and years is not itself circumstantial evidence that all those defects were either known to the sellers or present at the time of the sale. To the contrary, the fact that the sellers purchased the unoccupied home at a sheriff's auction and did not reside there tends to cut in the direction that the sellers were not aware of a number of latent defects. And the fact that the home inspector did not discover the hole in the well casing or the poor condition of the septic system tends to support the conclusion that the defects were not readily ascertainable. *See Pedone v. Demarchi*, 2007-Ohio-6809, ¶ 33 (8th Dist), citing *Nunez v. J.L. Sims Co., Inc.*, 2003-Ohio-3386, ¶ 17 (1st Dist.). This is particularly true when considering this fact in tandem with the fact that the sellers were not residing at the property and thus were in a substantially similar position as the inspector to detect (or not detect) defects.

{¶ 116} The only two facts that arguably circumstantially demonstrate the sellers were aware of any of the complained of defects is the rope tied around the wellhead to possibly conceal the hole and the installation of drywall over a cracked wall. In the case of the rope, the sellers correctly argue there is no evidence to determine when the rope was tied around the cracked casing. It would be a fair inference that if the sellers tied the

rope, they would have had to have seen the poor state of the well casing. But to get to that inference, we have to infer that they were the ones that did it because the buyers disclaim doing it. There is simply no basis in the record for such a double inference.

{¶ 117} The concealment claim regarding the drywall presents a closer call and arguably the failure to disclose it was a breach of contract. Here, the evidence shows the drywall was installed when the sellers had ownership and control of the property. While we lack direct evidence as to why it was installed, the buyers make a plausible argument that it was to conceal cracks and water seepage. Even if we accept this to be the case, this does not change the proper conclusion that the contract is the buyers' exclusive vehicle for recovery i.e., fraud was not sufficiently proven.

{¶ 118} Regardless of the sellers' intention in installing the drywall, R.C. 5302.30 requires the disclosure of all material matters. The failure to disclose what the sellers saw on the foundation wall, assuming it was truly material, was a breach of contract. But I do not think this evidence supports the manifest weight of the verdict on the fraud claim even considering the nondisclosure. The evidence does not support either there was an intent to mislead or that the concealment proximately caused damage to the buyers. But, even if a fraud claim here was proven, it is indistinguishable from the misrepresentation alleged in the RPDF; thus, any fraud claim here would have been subsumed by the sellers' contractual obligation to disclose. *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, ¶ 6.

{¶ 119} This leads me to my final concern regarding the jury's determination of damages. Upon a showing here of a breach of contract, the buyers were entitled to receive the benefit of their bargain i.e., their expectancy interest. *See Alternatives*

*Unlimited-Special, Inc. v. Ohio Dept of Edn.*, 2013-Ohio-3890, ¶ 29 (10th Dist.). In other words, the buyers should be put in the same position they would have been if the contract had been performed. *See id.* In my view, the only breach the jury could have properly found was the sellers' failure to disclose defects they probably observed on the basement wall. We have previously discussed there is often difficulty assessing these types of damages in cases like these so we have held that the cost of repair or replacement is an effective substitute. *Helfrich v. Strickland*, 2009-Ohio-4828, ¶ 39 (5th Dist.).

{¶ 120} In consideration of the law and the jury's verdict, I would conclude that the only damages the buyers would be entitled to here are the costs to repair or replace the basement wall. I would also hold that because the fraud claim cannot be sustained, the jury improperly awarded attorney's fees and punitive damages. *McFarren v. Canton*, 2016-Ohio-484, ¶ 92 (5th Dist.) (holding breach of contract claims alone cannot give rise to punitive damages); *MCM Home Builders, LLC v. Sheehan*, 2019-Ohio-3899, ¶ 69, 77 (holding attorney's fees in breach of contract cases are usually not awarded).

{¶ 121} For these reasons, I would sustain the third and fourth assignments of error and remand the matter to the trial court to enter a new judgment without punitive damages and attorney's fees and to dismiss the fraud claim. On such a remand, I believe it would also be necessary for the trial court to consider whether it is proper to reduce the jury's award to only the damages that reflect the cost to repair/replace the basement wall. Because the majority concluded otherwise, I respectfully dissent.